### BOLTON v. BALDWIN et al.
### No. 2258.

Court of Civil Appeals of Texas. Beaumont. Feb. 23, 1933.

Rehearing Denied March 8, 1933.

W. R. Blain and D. E. O'Fiel, both of Beaumont, for plaintiff in error.

Llewellyn & Dougherty and E. B. Pickett, Jr., all of Liberty, and W. H. Ward, of Houston, for defendants in error.

O'QUINN, Justice.

This is an interpleader suit. June 3, 1916, F. Antoine and his wife, Adlawyer Antoine, executed an oil lease on 75 acres of land, a part of the David Minchey league in Liberty county, Tex., to Marrs McLean, who assigned same to the Gulf Production Company. The royalty retained by the lessors was one-tenth of the oil produced and saved, the same to be delivered at the wells, free from charge to said lessors, or to their credit in pipe lines which might be connected with such wells. The fund, or cash amount of money, $11,246.-03, involved in this suit, accumulated under said lease operated by said Gulf Production Company; the oil being delivered to said Gulf Pipe Line Company, plaintiff herein. The land covered by the lease was the separate property of F. Antoine. F. Antoine died in April, 1920, leaving surviving him his wife, Adlawyer Antoine, and four minor children, Frederick, Sarah Lee, Theresa Jane, and Leanna Antoine, and so at his death his said four children became the owners of said land, subject to the one-third life interest that vested in their mother, the widow of said F. Antoine. The mother, said Adlawyer Antoine, was appointed and duly qualified as guardian of said minors, Frederick, Sarah Lee, Theresa Jane, now the wife of E. G. Thompson, and Leanna, now the wife of Emery Smith.

Said fund, or amount of money, $11,246.03, represents only one-fourth of the one-tenth royalty provided for by said lease, as by various assignments three-fourths of said one-tenth royalty were sold and transferred to other persons not parties to this suit. The period of time during which said fund accumulated extended from May 1, 1925, to March 31, 1930, and the oil produced, on which the royalty was calculated, was delivered by said Gulf Production Company to the Gulf Pipe Line Company, wherefore the pipe line company became liable, as the purchaser of said oil, to the owners of the royalty accruing under the lease for the value thereof. Because of disputes, affecting and conflicting claims to a one-fourth of the one-

tenth, or one-fortieth, part of said royalty, the Gulf Pipe Line Company, on April 24, 1931, filed this suit of interpleader against the widow and said four children of F. Antoine, deceased, and others, as defendants, for the purpose, as set forth in the prayer of plaintiff's bill, of having the rights of the defendants in and to said one-fortieth of said royalty fixed by decree of the court, particularly setting out the quantum of interest to which they, and each of them, are entitled to share in all and other and further payments due or to become due in respect to said one-fortieth royalty.

The defendants in error E. B. Pickett, Jr., and J. F. Richardson were made defendants in the bill of interpleader, but the defendant in error First State Bank of Liberty, Tex., and plaintiff in error, C. W. Bolton, both came into the case as interveners. By its judgment the court decreed that the plaintiff Gulf Pipe Line Company, being entitled to file its bill of interpleader and to the relief it sought, and having paid into the registry of the court the fund of money in question, "be and the same is now hereby entirely discharged of and from any and all liability to any and all of the claimants of and to said fund, both the defendants and the intervenors herein." The court also found defendants in error E. B. Pickett, Jr., and J. F. Richardson were the owners of the sum of $3,500 out of said total fund by virtue of having and holding an equitable lien against said total fund to that extent and having and holding an equitable title to such portion of said fund, and decreed that said Pickett and said Richardson "do have and recover as against and of and from all the other parties to this suit the said sum of $3,500.00." The court further found, "That the intervenor, First State Bank of Liberty, Texas, has a lien upon all the right, title and interest of the defendant, Adlawyer Antoine Baldwin, in and to said fund and sum of money," and entered judgment and decreed "that said mortgage lien existing in favor of said First State Bank of Liberty, Texas, be and the same is hereby foreclosed, and the said First State Bank of Liberty, Texas, is hereby adjudged and decreed to be the owner of said life estate of the said Adlawyer Antoine Baldwin in and to said monies, and as such owner, the said First State Bank of Liberty, Texas, is entitled to such revenues and income as may be realized from the sum of $2,415.34 out of the above mentioned total fund and sum of $10,746.03, this amount being one-third of the total amount remaining after deduction of the $3,500.00 hereinbefore decreed to the defendants, J. F. Richardson and E. B. Pickett, Jr., and $500.00 attorney's fee allowed the plaintiff," Gulf Pipe Line Company. To this judgment C. W. Bolton, Edith K. Jones, and Adlawyer Antoine Baldwin, individually and as guardian of the estates of Frederick Antoine and Sarah Lee Antoine, minors, excepted and gave notice of appeal, but C. W. Bolton only perfected his appeal and is plaintiff in error herein.

Numerous other defendants were disposed of by the judgment of the court, but they are not concerned here.

It was agreed by all parties that the bill or suit of interpleader was properly brought, and that sufficient grounds were shown for subjecting the fund of money to the court's jurisdiction and for depositing same in the registry of the court. It was also agreed that the said Gulf Pipe Line Company, plaintiff in interpleader, was entitled to have awarded to it the sum of $500 as attorney's fee. Deducting that sum, $500, from the $11,246.03, there remained $10,746.03 to be disposed of and distributed among the disputing claimants, who by their pleadings joined issues and asserted ownership and established their right to definite portions of said fund.

The right of interpleader existing and the equitable power of the court having been properly invoked, the filing of the bill gave the court, in the exercise of its equity jurisdiction, full power to hear and determine the claims and rights of ownership asserted to the fund of money in question by the several disputing claimants, and to adjust all equities involved, and by its final judgment to award and decree to each of the claimants, who established title thereto, whether legal or equitable, the particular portion of said fund belonging to such claimant. Legg v. McNeill, 2 Tex. 428; Rochelle v. Express Co., 56 Tex. Civ. App. 142, 120 S. W. 543; Melton v. Surety Co. (Tex. Civ. App.) 240 S. W. 574; Van Slyck v. Dallas Bank & Trust Co. (Tex. Civ. App.) 45 S.W.(2d) 641; 33 C. J. pp. 461, 466–468.

Plaintiff in error complains that the court erred in not sustaining his special exception to the answer and cross-action of defendants Pickett and Richardson wherein they asserted a right to a portion of the fund in controversy. The claim of Pickett and Richardson was based upon the following facts: Adlawyer Antoine (now Adlawyer Antoine Baldwin), the guardian of her four minor children, Frederick, Sarah Lee, Theresa Jane, and Leanna Antoine, employed said E. B. Pickett, Jr., and C. H. Cain, lawyers, to represent her and her said minor children in the defense of a suit in the federal court at Beaumont, Tex., known as the Wayman suit, in which suit the title of said minor children to the land in question was challenged, and also employed said Pickett and Cain to bring suit in the district court of Liberty county, Tex., known as the Jones suit (see 23 S.W.(2d) 308), against claimants to recover and remove cloud from their title to said land, and agreed to pay them for

960

their services in said two suits one-third of the amount of royalty that had already accumulated, and that would thereafter accumulate up to the final termination of said last-mentioned (Jones) suit, to the credit of said Adlawyer Antoine Baldwin, individually and as guardian of her said minor children under the terms of the mineral lease held and operated by the Gulf Production Company. The said fee was to be paid to said attorneys when said royalty money was freed from the adverse claim thereto asserted by the defendants in the Liberty county suit, and said royalty should become payable to and be paid to said Adlawyer Antoine Baldwin, individually and as guardian of the said minors. The services so contracted for were fully, faithfully, and successfully performed by said attorneys, whereby they earned and were entitled to receive the compensation agreed upon by them and said Adlawyer Antoine Baldwin for herself and as guardian of said minors and of which said fee the sum of $3,500 was due and unpaid. Said $3,500 was one-third of the total royalty balance on hand which had accumulated up to the date the Liberty county suit was finally terminated, and was due to be paid to said Adlawyer Antoine Baldwin, individually and as guardian of her said minor children, and was in the possession of and held by the plaintiff Gulf Pipe Line Company, and was a portion of the $11,246.03 fund set out in plaintiff's petition for interpleader. Cain assigned his interest in the attorney's fee in question to Richardson; hence his claim.

The special exception to the answer and claim of said defendants was grounded on the fact that Adlawyer Antoine Baldwin was the guardian of the estates of her minor children, and the contention that as such she was entitled to receive the portions of the fund in question to which they would be entitled, and that the claim, if any, of said Pickett and Richardson against said fund, or to be paid out of said fund, must be paid by and through her, as guardian, under orders of the probate court of Liberty county; in other words, that the claim of said Pickett and Richardson is a claim against the estates of said minors, and that they should be required to present their said claim to her (the said guardian of said minors) and to the probate court for allowance and to require payment through the probate court, and not through the instant trial court. As we understand the insistence of plaintiff in error, it is to the effect that the trial court was not authorized to pass upon and order paid the claim in controversy. This contention is not sound. The law, article 4168, R. S. 1925, requires that a guardian of the estate of a minor shall use due diligence to collect all claims or debts owing to the ward, and to recover possession of all property to which the ward has title or claim, provided there is a

reasonable prospect of collecting such claims or debts, or of receiving such property, and makes the guardian and his sureties liable for all damages occasioned by his negligence to exercise due diligence to do so. Also the law, article 4312, R. S. 1925, expressly provides that "all necessary and reasonable expenses incurred by the guardian in the preservation and management of the ward's estate, and in collecting or attempting to collect claims or debts due the ward, and in recovering or attempting to recover property to which the ward has a title or claim, and all reasonable attorneys' fees necessarily incurred in the management of such guardianship, shall be allowed the guardian, to be paid out of the estate on satisfactory proof thereof being made to the court."

It is not contended that the employment of Pickett and Cain, attorneys, to represent the guardian and the minors in the two suits relating to and affecting the title to the property of the wards, was unnecessary, or that the fees charged were excessive. Adlawyer Antoine Baldwin, as guardian of the estates of her minor children, was authorized to employ Pickett and Cain, attorneys, to represent said minors and their estates in defending the Wayman suit in the federal court at Beaumont, and in filing and prosecuting the suit against Jones et al. in the district court at Liberty, which was prosecuted to a final and favorable judgment in the Supreme Court of Texas. Had she not taken such action, it affirmatively appears her wards would have been wrongfully deprived of their entire interest in the land and the royalty then being and afterwards produced therefrom. By reason of these services lawfully contracted, and faithfully and successfully performed, said attorneys were entitled to a reasonable fee in compensation for said services. They presented their claim for said fee to said guardian, which she allowed, and to the probate court, which approved same. This allowance by the guardian, and order of approval by the probate court, had the effect of a judgment setting apart to said attorneys said sum, and entitled them to be paid said sum out of the very fund in controversy, Moore v. Hillebrant, 14 Tex. 312, 65 Am. Dec. 118; De Cordova v. Rogers, 97 Tex. 60, 75 S. W. 16; Logan v. Gay, 99 Tex. 603, 90 S. W. 861, 92 S. W. 255; Eastland v. Williams, 92 Tex. 113, 46 S. W. 32; Krawietz v. Kneiski (Tex. Civ. App.) 236 S. W. 805; Jones v. Williams (Tex. Civ. App.) 14 S.W.(2d) 300; and so they had an equitable ownership in and to said fund to the extent of their said allowed and approved fee. The district court having acquired by the bill of interpleader complete jurisdiction of the fund, which had been protected and preserved by the services of said attorneys, properly held that said attorneys had an equitable ownership in said fund to the extent of their said claim, and were entitled to a judg-

ment ordering same to be paid out of said fund. This was but a consummation of what the probate court had already ordered to be done.

Plaintiff in error cites us to the case of Glassgow v. McKinnon, 79 Tex. 116, 14 S. W. 1050, as sustaining his contention that Adlawyer Antoine Baldwin, guardian of said minors, was not authorized by law to make the contract with Pickett and Cain, lawyers, wherein she promised to pay them one-third of the royalty accruing from the oil lease and development under it of the land belonging to the minors, as a fee for defending and prosecuting the suits above mentioned. The cited case has no application to the facts of this case. There the guardian contracted with attorneys to recover certain land belonging to the minor and to allow said attorneys one-half of the land recovered as their fee. The attorneys recovered the land (160 acres), and it was sought to sell the whole tract for the purpose of partition between the minor and the attorneys; it being shown that the land itself was not susceptible of equitable partition. It was held that the probate court, in a matter of guardianship, had no power to order a sale of the land for purposes of partition. In other words, it was held that a guardian does not have the power to make a contract with an attorney for legal services in the recovery of land belonging to the ward, and to share the land recovered with the attorney. In the instant case, Pickett and Richardson made no effort to recover or obtain for themselves any portion of the land owned by the minors, nor did they have any such contract, but they asserted the right to recover a money demand against the estates of the minors in payment of compensation actually earned by attorneys regularly and lawfully employed to represent said minors in the saving and protecting of their said estates. Furthermore, Pickett and Richardson also pleaded and urged their right to recover their claim of $3,500 balance due on attorneys' fee on a quantum meruit basis. We think the court, in the absence of a contract for a stipulated sum as an attorney's fee, upon proper pleadings and proof, which both existed, was authorized to award judgment for said amount as a fee upon a quantum meruit for services performed and accepted to the benefit of the estate of said minors. But the contract to pay the one-third of the royalty accruing up to the termination of the Jones suit in Liberty county was not denied or in any way disputed, and so, being lawful, the court did not err in awarding judgment accordingly.

■ It is further insisted by plaintiff in error that the order of the probate judge approving and ordering paid the claim of said attorneys for their fee was not final and gave no force to their claim in the trial court, because, he says, he removed the matter of the approval of said claim by the probate court to the district court of Liberty county by writ of certiorari, and that same was then pending on the docket of said court undisposed of. The record does not disclose any of the proceedings as to said writ of certiorari other than that by such writ said matter was carried to the district court. Without discussing whether plaintiff in error was such party as had the right to undertake the review of the approval of the claim in controversy, we will say that the certiorari proceedings were of no avail. The action of the probate court in approving or refusing a claim in guardianship proceedings cannot be appealed or carried to the district court for review by certiorari. It must be done by appeal under article 4252, R. S. 1925. In such cases article 4318, relating to appeal, and article 4328, relating to bill of review, and article 4329, relating to certiorari, are not applicable. De Cordova v. Rogers, 97 Tex. 60, 75 S. W. 16; 21 Tex. Jur., § 62, p. 293.

■ It is contended by plaintiff in error that Pickett and Richardson had no assignment of any specific sum or interest in the fund in controversy, and, there being nothing of record to show that the estates of Theresa Thompson or Leanna Smith were indebted to said Pickett and Richardson, or that they were entitled to any portion of said Theresa Thompson and Leanna Smith's interest in said fund, he (plaintiff in error, C. W. Bolton), having purchased from said heirs for a valuable consideration and without notice of the claim of said Pickett and Richardson, was entitled to receive the entire amount of money assigned to him and to J. V. Polk, whose interest he had purchased, by said Theresa Thompson and Leanna Smith.

This contention is based upon the fact that November 26, 1929, Theresa Antoine Thompson and Leanna Antoine Smith, joined by their husbands, conveyed to J. V. Polk an undivided one-half interest of said heirs' undivided interest in and to 70 acres of the Frederick Antoine 75-acre tract of land, and also an undivided one-half interest in and to their right and interest in and to $10,407.41 royalty money then held by plaintiff Gulf Pipe Line Company derived from said land, which interests J. V. Polk conveyed to Bolton. He (Bolton) also asserted title and claim to the sum of $342 which he loaned to Adlawyer Antoine Baldwin, as guardian, for the use and benefit of said minors.

This contention must be overruled. It is agreed that Adlawyer Antoine Baldwin was, after the death of her first husband, Frederick Antoine, in 1920, duly appointed guardian of the estates of her four minor children, and that such guardianship had not been closed by order of the probate court. Two of the children, Sarah Lee and Frederick, are still minors, but September 27, 1927, Theresa married Arthur McCoy and after his death mar-

ried E. G. Thompson, and May 3, 1928, Leanna married Emery Smith. They were minors at the date of their marriage. As hereinbefore stated, attorneys Pickett and Cain, in 1926, were employed by the guardian of said four Antoine minors to represent their estates in the Wayman suit in the federal court and the Jones suit in the Liberty county district court. The Wayman suit was finally disposed of by judgment of the trial court on April 14, 1926. In the Jones suit, judgment favorable to said minors and their mother, guardian, was rendered by the trial court in October, 1926, and that judgment was affirmed by the Court of Civil Appeals and the Supreme Court. The claim of Pickett and Richardson, based upon the fee earned by said Pickett and Cain in said suits, was filed in the guardianship proceedings March 26, 1931, and allowed by the guardian on said date. The county judge approved said claim March 27, 1931. The land from which the oil was produced, and the royalty fund, which the court in this interpleader suit has ordered distributed among the several claimants, were involved in the Jones suit, which said suit was not terminated until the Supreme Court affirmed the trial court's judgment and the judgment of the Court of Civil Appeals January 29, 1930. 23 S.W.(2d) 308.

The probate records gave notice to plaintiff in error of the pendency of the guardianship by which the estates of the two minors Theresa Thompson and Leanna Smith were still subject to the control and jurisdiction of the probate court until said guardianship was legally closed. Furthermore, the conveyance from said Theresa Thompson and Leanna Smith to J. V. Polk, and the conveyance from Polk to plaintiff in error, Bolton, contained recitals putting Bolton upon notice that the property therein conveyed had been, and at the time of the conveyance was then, involved in litigation.

All persons are charged with notice of everything revealed by any instrument in the chain of title under which they claim an interest in land. In the chain of title under which Bolton asserts ownership to a portion of the fund involved is a deed from Theresa Jane McCoy and husband, and Leanna Smith and husband, to J. V. Polk, dated November 26, 1929, in which reference is made to a prior conveyance which same grantors had executed to W. E. Jones; it being stated that the grantors had conveyed to said Jones an undivided one-half interest "in and to any and all of the right, title and interest inherited by" said Theresa and Leanna Antoine from their deceased father, Frederick Antoine, and immediately followed by this recital: "Save and except a sum of money held by the Gulf Production Company, in the sum of $10,407.41 in and to which we have an interest, which we especially reserved from said conveyance to said W. E. Jones at the time of conveyance.

And, whereas, the said property has been and is involved in law suits, and at the present time there remains only a portion of same that is not involved and in and to which other parties do not make claim thereto at this time."

Said conveyance contained this other recital: "We do also hereby and by these presents grant, sell and convey unto the said J. V. Polk of the County of Jefferson and State of Texas an undivided one-half interest in and to all of our right title and interest in and to that certain amount of cash being $10,407.41 now held by the Gulf Production Company of Harris County, Texas, hereinabove referred to, and we do hereby direct and authorize the said Gulf Production Company, of said Harris County, their officers, agents and assigns to pay over and deliver to the said J. V. Polk of the County of Jefferson and State of Texas, the said undivided one-half interest in and to the said $10,407.41, and for which we specially do hereby authorize the said J. V. Polk to give a receipt therefor."

By deed dated June 21, 1930, J. V. Polk conveyed to plaintiff in error, C. W. Bolton, "the same land as conveyed in the deed from Theresa McCoy and others to J. V. Polk and which contains this recitation:

"It being the intention of this instrument to convey all of the right, title, equity, estate and interest in and to the above described land, which I own, especially all of the interest, title, estate, right and equity to me conveyed in the deed by Theresa Jane Antoine McCoy and by Arthur McCoy, Leanna Antoine Smith and husband Emery Smith by deed dated November 26, 1929, etc., (being the deed last above referred to) and to convey my entire interest in the personal property therein referred to, together with all of the rights and appurtenances therein and thereto in anywise appertaining."

See Houston Oil Co. v. Hayden, 104 Tex. 182, 135 S. W. 1149; Hexter v. Pratt (Tex. Com. App.) 10 S.W.(2d) 692, 693; Texas Co. v. Dunlap (Tex. Com. App.) 41 S.W.(2d) 42, 44; Temple Lumber Co. v. Kirby Lumber Co. (Tex. Civ. App.) 42 S.W.(2d) 1070, 1076.

There is nothing to show that plaintiff in error or his attorney made, or attempted to make, any inquiry or effort to ascertain what character of claims were being asserted to the land in question, or to what extent such fund was involved by other claims asserted thereto, at the time Theresa McCoy and Leanna Smith executed to Polk the deed whereby Polk and his vendees were specifically informed that only a portion of said total fund was not involved in litigation and not then being claimed by other parties.

■ Moreover, it is believed that plaintiff in error could not acquire title from female minors, who had married, free from liability for unpaid claims properly chargeable against

the estates of such minors of which the probate court still had jurisdiction. Article 4296, R. S. 1925, reads: "When the ward dies, or if a minor, arrives at the age of twenty-one years, or if a female, marries, or, if a person of unsound mind or habitual drunkard, is restored and discharged from guardianship, the guardianship shall be immediately settled and closed and the guardian discharged, as provided in this chapter."

Article 4297 provides that: "The guardian shall file with the clerk of the court in which the guardianship is pending his account for final settlement of such guardianship; which account shall show fully and completely," among other things, "3. The expenses and debts, if any, against the estate remaining unpaid," and "5. Such other facts as may be necessary to a full and definite understanding of the exact condition of the guardianship."

In the language of counsel for defendants in error: "These articles plainly indicate that the mere marriage of a female minor does not of itself withdraw jurisdiction of the probate court from over the minor's estate. The court retains. full power and authority to adjust and settle the estate, and this necessarily includes the consideration and settlement of unpaid expenses incurred by the guardian and properly chargeable to the estate. The two articles above quoted are a part of Chapter 15 of the Title 'Guardian and Ward', and said chapter is headed 'Final Settlement'. The next chapter is headed 'Costs of Guardianship'. Article 4312, a part of this chapter, expressly requires that there shall be 'paid out of the estate on satisfactory proof thereof being made to the court', all necessary and reasonable expenses incurred by the guardian in the preservation and management of the ward's estate, and in collecting or attempting to collect claims or debts due the ward, and in recovering or attempting to recover property in which the ward has a claim or title, and all reasonable attorneys' fees necessarily incurred in the management of such guardianship. And certainly such costs and expenses of the guardianship are prior in point of right to any title to property of the estate asserted by a third party under some trade had, before the guardianship has been closed, with a female minor who has married."

It is believed that plaintiff in error, C. W. Bolton, was, by the statutes above referred to, charged with constructive notice that the estates of the two married female minors were still subject to the jurisdiction of the probate court for the purpose of winding up and closing the guardianship relating to them and their estates, and that the probate court, in ordering final settlement of the guardianship, had the power to require the payment, out of said estates, of all unpaid claims properly and justly chargeable against the estates. Whitfield v. Burrell, 54 Tex. Civ. App. 567, 118 S. W. 153, 156 (writ refused).

What we have said disposes of plaintiff in error's first fifteen propositions.

Plaintiff in error's sixteenth, seventeenth, and eighteenth propositions assail the judgment of the court in favor of intervener First State Bank of Liberty, adjudging said bank to be the owner of the life estate interest of Adlawyer Antoine Baldwin in and to said impounded fund, and that said bank had and held a lien upon all of said Adlawyer Antoine Baldwin's life estate interest therein, and foreclosing said lien, as error. It is insisted (a) that, the asserted lien being verbal, it was not effective because there was no delivery of any portion of such fund to intervener, or any act placing said fund beyond the control of said assignor, and that a mere promise to pay the debt out of such fund did not amount to either a lien against said fund, or an assignment of same; (b) Adlawyer Antoine Baldwin not having made any claim to any portion of said fund, and said intervener bank not having a valid assignment of or lien against the fund, the court could not award any portion of said fund to said bank as the life estate of said Adlawyer Antoine Baldwin; and (c) that there was no evidence to establish the fact that said bank had a legal assignment of or lien against the life estate or interest of said Adlawyer Antoine Baldwin in and to said fund.

As these propositions bear upon the same question, they will be considered together. It is without dispute that the land upon which the oil lease was given, and out of the operation of which the royalty fund in controversy accumulated, was the separate property of Frederick Antoine, the first husband of Adlawyer Antoine, now Adlawyer Baldwin, and that at his death in 1920 his children, the four minors herein mentioned, inherited said land and the royalty funds resulting from the operation of said oil lease, subject to the one-third life estate interest therein of their mother, Adlawyer Antoine, now Adlawyer Baldwin. It is further without dispute that, at various times during the year 1929, Adlawyer Antoine Baldwin solicited and obtained loans from the intervener bank amounting to $1,650, for which she executed her several promissory notes, and promising to pay same out of her interest in the said royalty fund, and verbally pledging her said interest in said fund to protect and pay off said loan notes. Her application for said loan was made to the attorney E. B. Pickett for the bank and to the bank. Pickett had represented and was then representing her and her minor children in the litigation affecting the land and royalty funds in question. Pickett also represented the bank, and, upon her promise to pay said loan out of her interest in said royalty fund, and her verbally pledging her said interest in said fund to pro-

tect and pay off said loan, she was advanced the money—every dollar in cash—she at the time being in necessitous circumstances, which was known to the bank and her said attorney. Said Adlawyer Antoine Baldwin did not controvert the claim of the bank to its lien or claim to the money, and does not here do so. Under these facts, we think it clear that the bank did and does have a verbal or equitable lien upon the life estate interest owned by said Adlawyer Antoine Baldwin in the royalty fund impounded by the bill of interpleader, and that the court, in the exercise of its equity jurisdiction, was required to determine the ownership of said life estate interest and to properly award same, and that the court properly adjudged to the bank the amount out of said interest which she verbally pledged to said bank as security for the loan. Such verbal pledge or mortgage upon Adlawyer Antoine Baldwin's life estate interest in said fund was valid and binding, although the money pledged as security for the payment of said loan was not placed in the possession of the bank, but remained in the custody of the stakeholder. The interest of Adlawyer Antoine Baldwin was her separate property inherited from the estate of her deceased husband, Frederick Antoine. As such she had the right to mortgage same. Collins v. Austin (Tex. Civ. App.) 32 S.W.(2d) 912 (writ refused); Jones on Chattel Mortgages (5th Ed.) § 42; Id. § 12; Richardson v. Washington, 88 Tex. 339, 31 S. W. 614.

In the case last cited, the court, at page 344 of 88 Tex., 31 S. W. 614, 616, says: "In equity, however, a lien may be created without the passing of the legal title. Where one agrees to execute a mortgage on certain property, and, at the time he is called upon to perform his agreement, he has the ability to do so, equity will either compel its execution, or, in a suit to enforce the lien, will consider that as done which ought to have been done, and enforce the agreement as a mortgage."

█ It is well settled in this state, in accord with the weight of authority, that a verbal chattel mortgage is valid and binding. Gardner v. Bank, 54 Tex. Civ. App. 572, 118 S. W. 1146 (writ refused); Galbraith v. Bank, 63 Tex. Civ. App. 179, 133 S. W. 300 (writ refused); Edwards v. Mayes (Tex. Civ. App.) 136 S. W. 510; Sparkman v. Bank, 112 Tex. 33, 244 S. W. 127; 11 C. J. § 71, p. 453; 5 R. C. L. § 10, p. 390.

In 11 C. J., cited supra, it is said: "As a general rule, any agreement entered into by the parties for the purpose of pledging the property or some interest therein as a security for a debt, which is informal and insufficient as a common law mortgage, will nevertheless be enforced in equity as an equitable mortgage, where it appears that it was intended by the parties as a mere security for a debt."

In 5 R. C. L. cited supra, it is stated: "*Equitable Mortgages.* An agreement founded on a valuable consideration to give a mortgage on a chattel constituted an equitable mortgage. Equitable chattel mortgages may be created by parol, and it is not necessary that the agreement to give such mortgage should be in writing."

█ Furthermore, there is nothing in the record to show that plaintiff in error, C. W. Bolton, attempted to establish a claim to any part of the royalty fund vested in Adlawyer Antoine Baldwin. That being true, plaintiff in error cannot complain of the trial court's judgment whereby the interest of said Adlawyer Antoine Baldwin in the royalty fund was adjudged to First State Bank of Liberty, and from which said judgment she did not appeal. It is not shown that plaintiff in error had any assignment or transfer of any nature of any portion of the one-third life estate or interest of Adlawyer Antoine Baldwin, inherited from her deceased husband, Frederick Antoine, therefore plaintiff in error has no interest in the disposition of said interest, and cannot complain of the court's judgment as to same.

No error being shown, the judgment should be affirmed, and it is so ordered.

Affirmed.