MAURICE STERN, Plaintiff, *v.* MAURICE NEWTON et al., Copartners under the Name of Hallgarten & Company, Defendants, and A. J. STERN & CIE, Impleaded Defendant.

Supreme Court, Special Term, New York County, February 5, 1943.

*James B. Alley* and *James Brodeur* for plaintiff.

*Mathias F. Correa, U. S. Attorney* for Southern District of New York, and *George A. McNulty (A. Mott Werner,* General Counsel for Alien Property Custodian, of counsel) for Leo T. Crowley, Alien Property Custodian, intervener.

PECORA, J. Plaintiff brought an action against the defendants, partners in a firm trading as Hallgarten & Co., to recover possession of certain securities held in an account with said Hallgarten & Co., in the name of " A. J. Stern & Cie, en liquidation " (hereinafter called the Company). A. J. Stern & Cie was a general partnership doing a private banking and stock brokerage business, organized and existing under the laws of France, and maintained its office in the city of Paris, in what is now

occupied France. The Company, as appears from its title, had gone into liquidation, sometime in 1938. After the commencement of this action, defendants moved to implead the Company pursuant to the provisions of section 287-b of the Civil Practice Act. On May 18, 1942, an order was entered in this court, directing that the Company be brought into the action as a party defendant, and that service of a supplemental summons on the impleaded defendant be made by publication, and by mailing copies of the requisite papers to the impleaded defendant in care of the Secretary of the Treasury, at Washington, D. C., in accordance with rule 52 of the Rules of Civil Practice. The order further provided that the securities, which are the subject matter of the action, should be held by the original defendants to the credit of the action until final judgment, then to be disposed of in accordance therewith.

The requirements of the order were fully complied with. Upon failure of the impleaded defendant to appear, plaintiff moved in this court for judgment for the relief demanded in the complaint. The motion, returnable on August 24, 1942, was adjourned several times at the request of the Department of Justice, acting for the Alien Property Custodian. On September 21, 1942, the Alien Property Custodian moved for leave to intervene as a defendant in this action. He alleged that on September 19, 1942, pursuant to the Trading with the Enemy Act, as amended (U. S. Code, tit. 50, Appendix, § 1 *et seq.*), and to Executive Order No. 9193, he issued Vesting Order No. 155, which vested in the Alien Property Custodian the securities sought by plaintiff in the present action.

Before the decision upon his application to intervene, the Alien Property Custodian made another motion for summary judgment under rules 113 and 114 of the Rules of Civil Practice, predicated on the assumption that the motion to intervene would be granted. Plaintiff makes the preliminary objection that the motion for summary judgment is premature. It is true that the intervener's motion under rules 113 and 114 is based upon a pleading not technically in the case; it is, therefore, to that extent premature. (*Bobrose Developments, Inc.,* v. *Jacobson,* 251 App. Div. 825; *Carner* v. *Manufacturers Trust Co.,* 248 App. Div. 770; *Apperson Realty Corp* v. *Wolosky,* 156 Misc. 29.) However, since this court is granting the motion to intervene, and since the parties have addressed themselves fully to the merits of the controversy, it would seem an utterly useless procedure merely to deny the motion without prejudice, only to have the application brought on *de novo* upon the

identical papers. The court therefore has consolidated both plaintiff's and the intervener's motions for judgment.

The motion to intervene is granted. A third claimant may intervene in any interpleader proceeding to assert a claim to the property, even though the original pleadings do not indicate the existence of such claim or name him as a party to the action. (*Edison Electric Illuminating Co.* v. *Frick Co.*, 146 App. Div. 605. See, also, *Bourne* v. *State Bank*, 106 Fla. 46; *Bolton* v. *Baldwin*, 57 S. W. 2d 957 [Tex.].)

The Alien Property Custodian urges that the effect of the Vesting Order was to entitle him as such Custodian to immediate possession of the securities, and that this right to possession cannot be blocked by judicial inquiry into ownership or status. The Vesting Order contains a finding that the securities are property which is payable or deliverable to, or claimed by A. J. Stern & Cie, in liquidation " which is a French corporation [sic] having its place of business in Paris, France;" further, that to any extent that such French company is a person not within a designated enemy country it is controlled by, or acting for or on behalf of or as a cloak for a designated enemy country (Germany), and that the national interest of the United States requires that it be treated as a national of such designated enemy country (Germany). The Vesting Order then vests the securities " to be held, used, administered, liquidated, sold or otherwise dealt with in the interest of and for the benefit of the United States." Finally provision is made for any person, except a national of a designated enemy country, who asserts a claim, arising as the result of the Vesting Order, to file a notice of claim with the Alien Property Custodian.

It seems clear that the Company was properly determined to be a " National " of a " designated enemy country " within the definition of section 10 of Executive Order 9095 (as amd. by Executive Order No. 9193), and section 5 of Executive Order 8389 (as amd. by Executive Order No. 8998). Certainly the language of Executive Order 9095 closes the door to any inquiry at this stage as to the correctness of the determination by the Alien Property Custodian on that point. It specifically provides that such determination " shall be final and conclusive as to the powers of the Alien Property Custodian to exercise any of the power or authority conferred upon me [the President] by section 5 (b) of the Trading with the Enemy Act, as amended." The exigencies of war create many sudden stresses and emergencies. In such periods, the national security is paramount. It might well be imperiled if, in the case of the

seizure by our government of enemy owned or controlled property, the effectiveness thereof should be suspended while claims or rights to the property were in process of judicial determination.

The plaintiff contends, however, that the Alien Property Custodian may capture only that property of the enemy national which the latter owned, or in which he had an interest, at the time of the service of the Vesting Order. Since the default of the Company occurred before the issuance of the Vesting Order, plaintiff asserts that he became entitled to the securities on such default, and that therefore defendant Company at that time had no right, title or interest in the securities. That position is untenable. The rights of the parties were not determined on the day of the default. A determination in this action could only be had by judgment. Section 493 of the Civil Practice Act is applicable here, since there has not been personal service of the summons. As was said in *Bullard* v. *Sherwood* (85 N. Y. 253, 256): "The very requirement of an application to the court implies a judicial determination of the proper judgment to be rendered which is not at all controlled by the legal conclusions of the pleader. But the result is different where no application is necessary." (See, also, *McClelland* v. *Climax Hosiery Mills*, 252 N. Y. 347; *Matter of Laughlin*, 255 App. Div. 927.)

Since in the case at bar application to the court was necessary for judgment, and since the granting of a judgment would not have been solely a ministerial act, the securities did not *ipso facto* become the property of the plaintiff upon default. The property was subject to the Vesting Order at any time before judgment.

It makes no difference whether the securities were in fact the property of plaintiff, and were only being held in the name of the Company as a nominee. Acting under a fundamental war power of the Government to seize enemy property (U. S. Const. art. I, § 8, cl. 11) the President of the United States has been given broad discretion as to such seizures. He has delegated those powers to the Alien Property Custodian. In *Baltimore & O. R. Co.* v. *Sutherland* (18 F. 2d 560), where the claim was made that securities were held in the name of the Deutsche Bank to facilitate transfers and that the Bank had no interest in the bonds, it was held there could be a seizure of the property, and that the question of ownership could not be litigated. In *Central Trust Co.* v. *Garvan* (254 U. S. 554) it was said that "for the purposes of immediate possession the determination of the Enemy Property Custodian is conclusive, whether right

or wrong." So too in *Stoehr* v. *Wallace* (255 U. S. 239) the Supreme Court said: "That Congress in time of war may authorize and provide for the seizure and sequestration through executive channels of property believed to be enemy-owned, if adequate provision be made for a return in case of mistake, is not debatable. *Central Union Trust Co.* v. *Garvan, supra.* There is no warrant for saying that the enemy ownership must be determined judicially before the property can be seized; and the practice has been the other way. The present act commits the determination of that question to the President, or the representative through whom he acts, but it does not make his action final." (To the same effect see *Commercial Trust Co.* v. *Miller,* 262 U. S. 51; *Garvan* v. *$20,000 Bonds,* 265 F. 477; *Garvan* v. *Commercial Trust Co. of N. J.,* 275 F. 841; *American Exchange Nat. Bank* v. *Garvan,* 273 F. 43.)

In the instant action the Alien Property Custodian vested the property itself and not merely the Company's interest therein. Where the Custodian seizes only the right, title and interest of an enemy national, a question is presented as to the extent of that interest. (See *Kahn* v. *Garvan,* 263 F. 909.) But where the Custodian vests the particular property, as distinguished from the " interest " of the enemy national in the property, he takes the entire right, title and interest therein, regardless of the *quantum* owned by the enemy national.

This court holds that it was for the Alien Property Custodian to determine whether the interests of the United States would be effectively served by the vesting of the Company's property, and that the validity of that determination, or the validity of any other basis of the Vesting Order, is not for this court to review. The Custodian's Vesting Order does not finally determine whether the plaintiff or the Company is entitled to the property. It does however give him the right to the immediate possession of the property for the benefit of the United States. Both the Vesting Order and the regulations issued by the Alien Property Custodian provide for the recovery of the securities by a person asserting a superior right. But the procedure thus prescribed for filing a claim will have to be followed by plaintiff. The motion for summary judgment made by the Alien Property Custodian is granted. Plaintiff's motion for judgment is denied. The judgment shall direct delivery of the securities and all income and dividends therefrom by Hallgarten & Co. to the Alien Property Custodian and shall also provide that said Hallgarten & Co. upon such delivery shall be relieved from any and all liability with reference to the property or any income therefrom. Settle judgment accordingly.