In the Matter of the Estate of RAFFAELE VISCOMI, an Incompetent.

ALIEN PROPERTY CUSTODIAN OF THE UNITED STATES, Appellant; ONEIDA NATIONAL BANK AND TRUST COMPANY OF UTICA, as Committee, Respondent.

Fourth Department, March 20, 1946.

*Herbert Wechsler, Assistant Attorney-General; Irving J. Higbee, United States Attorney for Northern District of New York (Harry Le Roy Jones, M. S. Isenbergh* and *Irving Jaffe* of counsel), for appellant.

*Salvador J. Capecelatro* for respondent.

LARKIN, J. Raffaele Viscomi, an alien not naturalized, a native of Italy, had resided in Oneida County for a number of years prior to November 1, 1939. On that date he was, in the Oneida County Court, adjudged incompetent and the Oneida National Bank and Trust Company of Utica, New York, appointed committee of his person and estate. The committee has never been discharged. Early in November, 1939, Viscomi was committed, as an insane person, to the Marcy State Hos-

pital at Marcy, New York. There he remained as a patient until May, 1940, when, arrangements having been made by the Department of Mental Hygiene, he went to Italy to visit his brother in the hope that the visit and voyage might help his mental condition. Shortly after his arrival in Italy, that country entered the European war. Thereafter in 1941, prior to December 8th, the Italian Government sought unsuccessfully, in the County Court of Oneida County, to obtain possession of Viscomi's property from his committee. Viscomi, as far as the record discloses, has remained, since 1940, and still is, in Italy.

On May 7, 1943, the Alien Property Custodian issued Vesting Order No. 1439 (8 Federal Register 6195), in which he determined that Viscomi, as the legal owner of the property in the temporary custody of his committee, was a national of Italy, a designated enemy country, and that if he were not within Italy, the national interest of the United States required that he be treated as a national of Italy, a designated enemy. By this order, the custodian vested in himself all the property and estate of Viscomi which was in the possession of his committee, to the end that same might be held, administered, sold or used in the interests of the United States. In June, 1943, the custodian, having previously demanded that the committee turn over to him this property, served upon the committee certified copies of the Vesting Order. The committee refused to comply. Thereafter the custodian filed with the County Court his petition setting forth these facts above narrated, and obtained an order directing the committee to show cause why an order should not be made by the County Court directing its committee to turn over to the custodian, Viscomi's property. After a hearing, the County Court denied the application, which was heard on the petition, with exhibits attached, and the committee's answer. The apparent basis of the court's decision, as disclosed by the opinion, was that there was no legal ground for a determination that the actual residence and domicile of Viscomi, the incompetent, was in Italy and not in Oneida County, because Viscomi, being incapable of intelligent action, was unable, of his own volition, to change his domicile, and the committee was without power so to do. The court further determined that the committee had never attempted to change the domicile of the incompetent. As the result of such determination, the court held that

the custodian's finding that Viscomi was a national of Italy was without legal basis, and so he was without authority to vest in himself the incompetent's property. From the order entered, the Alien Property Custodian has appealed to this court.

On this appeal two questions are presented. *First,* whether property in the custody of a committee for an incompetent person is property in the process of judicial administration as defined by subdivision (f) of section 2 of Executive Order No. 9193 (Code of Fed. Reg. Cum. Supp., tit. 3, pp. 1174, 1175), and *second,* whether in a possessory proceeding, like the instant one, brought by the custodian after having vested title in himself by proper order, the legality of that Vesting Order can be determined herein.

The committee's position as to the first question is that the Trading with the Enemy Act (U. S. Code, tit. 50, Appendix, § 1 *et seq.*) was only designed to prevent the possession, use or disposal of assets and property within the United States belonging to enemy nations and their nationals. So it is argued that even though Viscomi is an alien who has never formally renounced his allegiance to Italy, and even if he be still temporarily residing there, nevertheless, since his property has been impounded by the County Court of Oneida County, there is no real basis for the seizure of that property, already in the custody of a court of this State, in order to prevent its use by an enemy nation. In advancing this argument, the committee seems to lose sight of the fact that not only was it the purpose of the act which authorized the creation of the office of Alien Property Custodian, to prevent the enemy country from utilizing its nationals' property, located in the United States, but also, if it became necessary so to do, to enable this country to utilize the same property in order successfully to wage war upon the national's country. The importance of economic warfare during the present World War was much greater than it was during the First World War. Such legislation as the Trading with the Enemy Act was not intended purely as a defensive measure but offensive as well. This act was designed not only to prevent the use of property located in this country belonging to a national of an enemy country in the furtherance of the enemy's war effort, but also, if necessary, to utilize the same property for the benefit of

this country in the promotion of our own war effort. Concededly, title to this property is in the incompetent. True, it is in the custody of the County Court for the time being, that is, during the period of Viscomi's incompetency, and is being conserved through the court's own officer, the committee, solely in the interests of the incompetent. Still, if the incompetent died intestate, it would pass to his distributees. If he died testate, leaving a will executed prior to his incompetency, it would pass under that will. As in the last war, so in this present one, the custodian has frequently seized property and interests in the custody of a court being administered through an executor or administrator under the jurisdiction of a Probate Court, or in the hands of a trustee accountable to some court for his administration of the trust. The language of subdivision (f) of section 2 of Executive Order No. 9193 expressly includes any property of any nature whatsoever, which is in the process of administration by any person acting under judicial supervision, or which is in partition, libel, condemnation or other similar proceedings, which is payable or deliverable to or claimed by a designated enemy country or national thereof. Moreover subdivision (b) of section 5 of the Trading with the Enemy Act (U. S. Code, tit. 50, Appendix, § 5, subd. [b]), provides that any property or interest of any foreign country or national thereof shall vest when, as and upon the terms directed by the President, in such agency or person as may be designated from time to time by the President. The authority so given by this act itself, to the President, furnished the basis for Executive Order No. 9193 already noted. It would seem therefore to follow that within the express and implied language of the act, the property of this incompetent, if he was a national of Italy, was subject to seizure by the custodian, and upon the making of the proper Vesting Order, the custodian became vested with title and the right to the possession of the property.

This was not such a situation as might exist where all that could be seized by the custodian would be the interest of a national of an enemy country in property which was in the course of administration and the amount of which could not be determined until the conclusion of the court proceedings. Here no one, other than the incompetent, has any right, title or interest in the estate now in the hands of the committee, except the fiduciary for the payment of the expenses of administration.

Since any incompetent has title to his property under the control of his committee, in the event that his incompetency ceases and he becomes again competent, he can demand, and is entitled to receive, his property from the committee. In the instant situation, the custodian, by his Vesting Order, stepped into the shoes of the incompetent, as the one having title to the property; the custodian, just the same as the incompetent could have done, if he had been restored to sanity, was entitled to have this property turned over to him. It must be borne in mind that by his Vesting Order the custodian did not seize the *rights* which the incompetent had *in* the *property,* but on the contrary, he vested in himself the very *corpus* of the *res.* (*Garvan* v. *$20,000 Bonds,* 265 F. 477; *Kahn* v. *Garvan,* 263 F. 909, 913).

Although the question does not seem to have been presented to the court, nor for that matter, considered by it, nevertheless, *Josephberg* v. *Markham* (152 F. 2d 644) decided December 10, 1945, by the Second Circuit Court of Appeals, might well be treated as an authority against the committee's position on the applicability of the act, for the very question was inherent in that litigation. In that case, the committee surrendered the property to the custodian upon demand, and thereafter brought an action under subdivision (a) of section 9 of the Act (U. S. Code, tit. 50, Appendix, § 9, subd. [a]), to recover it. The incompetent was an American citizen, who had been in Italy for a number of years. It was determined by the custodian that he was a national of that country. Here the alien is not a citizen of the United States and at the time of the Vesting Order was temporarily residing in Italy. In the District Court, the action brought by the committee to recover the property was dismissed on the merits. The Circuit Court of Appeals reversed that judgment and directed the return of the property to the committee, but not on the ground that the act did not authorize the seizure of property of an incompetent in the custody of the Supreme Court of this State, acting through its officer, the committee. While, on the merits, this decision is favorable to the committee's argument as to the right of the custodian to declare Viscomi an Italian national, it is of no value in sustaining the order of the County Court.

Giving then to the language of the act and the Executive Order its ordinary meaning, the seizure of the incompetent's property in the hands of the committee, provided Viscomi was a national of Italy, was authorized.

The only other question which need be considered is whether, in the proceeding brought by the custodian asking the court which appointed the committee to direct its officer to turn over to the custodian the property in its possession, the court was authorized to inquire into the validity of the Vesting Order. On that question the position of the custodian seems to be sound. By the terms of the Executive Order, subdivisions 12 and 13 make the determination of the Alien Property Custodian final and conclusive, upon his power to exercise the authority conferred upon him by the act. The same regulation was considered by the courts in seizures by the Alien Property Custodian in the First World War. In *Central Trust Co.* v. *Garvan* (254 U. S. 554, 566) the court states: " * * * for the purposes of immediate possession the determination of the Enemy Property Custodian is conclusive, whether right or wrong." In *Stoehr* v. *Wallace* (255 U. S. 239, 245) is the following: " That Congress in time of war may authorize and provide for the seizure and sequestration through executive channels of property believed to be enemy-owned, if adequate provision be made for a return in case of mistake, is not debatable. * * * There is no warrant for saying that the enemy ownership must be determined judicially before the property can be seized; and the practice has been the other way. The present act commits the determination of that question to the President, or the representative through whom he acts, but it does not make his action final." In *Miller* v. *Lautenburg* (239 N. Y. 132, 136) the following is found: " The determination by the delegate [custodian] of the President that the property is enemy owned has the same force as a like determination by the President himself. The determination, though not conclusive, has *prima facie* a validity that suffices to sustain a transfer of possession." In *Matter of Sielcken* (167 Misc. 327) the Surrogate held that he was without power to inquire into the validity of the Executive Order of the President, or the legality of the Vesting Order of the Alien Property Custodian, or the circumstances which led the custodian to designate the person as an enemy, but that, on the

contrary, one seeking to attack the legality of the Vesting Order must resort to a Federal forum.

Under subdivision (a) of section 9 of the Act, the one whose property has been seized, and that would apply to this committee representing the incompetent, may bring an action to recover this property from the custodian, either in the Supreme Court of the District of Columbia, or, in this situation, in the District Court for the Northern District of New York. In that action, the Vesting Order, itself, is not conclusive, but its validity may be determined. But no State court may do so for the reason that the act itself limits the bringing of the action to the two courts already named. Therefore, it seems reasonably clear that in this purely possessory proceeding, assuming that the Oneida County Court has jurisdiction, as to which no question has been raised, the County Court was without authority to determine the legality of the Vesting Order, which is really what it did in the instant case. This conclusion is warranted despite the holding in *Josephberg* v. *Markham* (152 F. 2d 644, *supra*).

For the foregoing reasons, the order of the Oneida County Court should be reversed and the application of the custodian granted in accordance with the prayer of the petitioner.

All concur. Present — Taylor, P. J., Dowling, McCurn, Larkin and Love, JJ.

Order reversed on the law, without costs of this appeal to any party, and application of the custodian granted in accordance with the prayer of his petition, without costs.