**MARKHAM, Alien Property Custodian, v. TAYLOR et al.**

District Court, S. D. New York.
Jan. 21, 1947.

John F. X. McGohey, U. S. Atty., of New York City (Thomas G. Donlan, Asst. U. S. Atty., of New York City, and James D. Hill, Dept. of Justice, of Washington, D. C., of counsel), for Alien Property Custodian.

Schwartz & Frohlich, of New York City (Herbert P. Jacoby, of New York City, of counsel), for defendant Deems Taylor, etc.

A. Walter Socolow, of New York City (A. Walter Socolow and Alexander D. Diamond, both of New York City, of counsel), for defendant Henry M. Propper.

COXE, District Judge.

These are motions (1) by the plaintiff, and (2) by the defendant Propper as Receiver of an Austrian cooperative society known as AKM, for judgment on the pleadings, or in the alternative for summary judgment, with respect to Count No. 2 of the complaint.

The action is brought by the plaintiff, Alien Property Custodian, to recover different sums alleged to be owing by the defendant, American Society of Composers, Authors & Publishers (hereinafter referred to as ASCAP), to three European performing rights societies, respectively. The complaint contains three separate counts, each relating to the sum alleged to be owing by ASCAP to one of these three European societies. Count No. 2 concerns only AKM, the Austrian society for which the defendant Propper is the receiver, and as to that count it is alleged that ASCAP is now holding for AKM the net sum of $62,809.85.

The plaintiff in his motion seeks no affirmative relief against ASCAP but merely asks an adjudication that the defendant Propper as receiver has no right, title or interest in or to the funds held by ASCAP for AKM.

The facts are not in dispute, and may be summarized briefly as follows:

ASCAP is an unincorporated association in New York City engaged in the business of granting licenses and collecting royalties for the public performance of the musical works of its members, and allotting and distributing such royalties. Prior to December 31, 1938, AKM was a registered cooperative society with limited liability, organized under Austrian law and engaged in Austria in the same character of business as ASCAP.

On January 1 1933, ASCAP entered into a written contract with AKM under which AKM granted to ASCAP the exclusive right to license in the United States and its possessions the non-dramatic public per-

formance for profit of certain musical works, the performing rights of which then were or which during the term of the agreement might be vested in or controlled by AKM. ASCAP agreed to collect from its licensees royalty payments for such public performances, and, on or about the 30th day of September succeeding the close of each calendar year, to account to AKM for collections made for the preceding calendar year, and to remit to AKM the proceeds thereof after deduction of commissions and expenses. This agreement remained in force until December 31, 1938, and the sum of $62,809.85 involved in Count No. 2 is the alleged balance of the collections made by ASCAP for the account of AKM to and including December 31, 1938, after deduction of commissions and expenses.

On June 9, 1941, one Franz Sobotka, a national of Austria, commenced an action in the New York Supreme Court, New York County, against AKM, alleging that it was a corporation organized and existing under the laws of Austria and had been liquidated and had assets within the State of New York, and praying for the appointment of a receiver of such assets pursuant to Section 977-b of the Civil Practice Act of New York. In that action the defendant Propper, on an ex parte application, was appointed on June 12, 1941, temporary receiver of the property and assets of AKM within the state of New York.

On June 14, 1941, Executive Order No. 8389, 12 U.S.C.A. § 95a note, which had originally been promulgated by the President on April 10, 1940, was, with amendments, made applicable to Austria (6 F.R. 2897). Under this order the transfer of any property of Austrian nationals was prohibited unless authorized by the Secretary of the Treasury. On July 9, 1941, Propper served on ASCAP written notice of his appointment as temporary receiver, together with a demand for the payment of the funds of AKM held by ASCAP, and on July 29, 1941, Propper as temporary receiver commenced an action in the State court to recover such funds. This action is still pending undetermined in the State court. On September 29, 1941, upon default of AKM, final judgment was entered against it in the receivership action, and Propper was appointed permanent receiver of the property and assets of AKM within the State of New York.

On September 4, 1943, the plaintiff, by vesting order No. 2097 (8 F.R. 16463), determined that the funds held by ASCAP for AKM were the property of AKM, and vested in himself all right, title, interest and claim in and to such funds. On September 11, 1943, the plaintiff made written demand on the defendant ASCAP for the funds held for AKM, and when this demand was refused the plaintiff commenced the present action. The Secretary of the Treasury has at no time licensed or otherwise authorized the transfer of the AKM funds held by ASCAP to the defendant Propper as receiver.

■ The question is thus presented whether the defendant Propper as receiver of the New York assets of AKM has any right, title or interest in or to the funds held by ASCAP for AKM. This is a question which this court has jurisdiction to determine. See Markham v. Allen, 326 U.S. 490, 66 S.Ct. 296. It is the contention of the defendant Propper that he acquired title to these funds upon his appointment as temporary receiver on June 12, 1941, but in any event upon his appointment as permanent receiver on September 29, 1941.

■ The defendant Propper was appointed temporary receiver, and later permanent receiver, in the state court in an action brought against AKM under section 977-b of the New York Civil Practice Act. This section was originally enacted in 1936, and authorized the institution of an action for the appointment of a receiver of the assets in New York State of a foreign corporation which had been dissolved, liquidated or nationalized, or had ceased to do business for any reason. The purpose of the statute was to administer the New York assets of such a corporation and to prescribe a method of distribution, "irrespective of the scheme of distribution promulgated in any other state, inclusive of the domicile of the foreign corporation." Oliner v. American-Oriental Banking Corpor-

ation, 252 App.Div. 212, 297 N.Y.S. 432, 433, affirmed 277 N.Y. 588, 13 N.E.2d 783.

The section authorizes the appointment of a temporary receiver "pending the determination of the action;" it specifies the mode of service of process on the defendant; and it provides for the entry of judgment and the appointment of a permanent receiver upon default of the defendant or after trial. It also provides that any receiver appointed pursuant to the section "shall have all the powers and duties * * * as are possessed by * * * receivers * * * by the laws of the State of New York," and further, that "Title to all assets, credits, choses in action and property * * * within the state of New York shall immediately vest in the receiver upon the making of the order appointing him."

█ I find nothing in the language of this section which departs from the general New York rule, applicable to chancery as well as statutory receiverships, that a temporary receiver does not, by virtue of his appointment, obtain title, but merely a right to possession, Keeney v. Home Insurance Company, 71 N.Y. 396, 401, 27 Am.Rep. 60; Herring v. New York, L. E. & W. R. Co. 105 N.Y. 340, 12 N.E. 763; Decker v. Gardner, 124 N.Y. 334, 26 N.E. 814, 11 L.R.A. 480. See New York General Corporation Law, Consol.Laws, c. 23, §§ 162, 163, 168. I hold, therefore, that the defendant Propper did not acquire title to the funds held by ASCAP for AKM upon his appointment as temporary receiver on June 12, 1941.

It remains to consider whether the defendant Propper obtained title to the AKM funds held by ASCAP upon his appointment as permanent receiver on September 29, 1941. On this branch of the case the plaintiff insists that the defendant Propper obtained no such title by reason of the prohibitions of Executive Order No. 8389.

Executive Order No. 8389 became applicable to the property of Austrian nationals on June 14, 1941, and reads in part as follows:

"Section 1. * * * All of the following transactions are prohibited, except as specifically authorized by the Secretary of the Treasury by means of regulations, rulings, instructions, licenses, or otherwise, if * * * (ii) such transactions involve property in which any foreign country designated in this Order, or any national thereof, has at any time on or since the effective date of this Order had any interest of any nature whatsoever, direct or indirect: * * *

"E. All transfers, withdrawals or exportations of, or dealings in, any evidences of indebtedness or evidences of ownership of property by any person within the United States; * * *

"Section 7. * * * Without limitation as to any other powers or authority of the Secretary of the Treasury * * * under any other provision of this Order, the Secretary of the Treasury is authorized and empowered to prescribe from time to time regulations, rulings, and instructions to carry out the purposes of this Order * * *."

█ Clearly, under the language of this Order, any unlicensed transfer of the AKM funds held by ASCAP was expressly prohibited. And this prohibition was as applicable to a transfer by judicial process as to a transfer by voluntary act. Even if there were any doubt on that subject, which I do not entertain, this doubt was completely removed by the interpretative General Ruling No. 12 issued by the Secretary of the Treasury on April 21, 1942 (7 F.R. 2991). Under this Ruling it was provided in Section (1) that any unlicensed transfer of funds, such as involved in the present action, was "null and void"; and in Section (4) that no transfer of such funds by judicial process created a greater right than the owner of the funds could have conferred by voluntary act prior to the issuance of a license. In view of these prohibitions of the Executive Order I do not think that the defendant Propper obtained any title to the AKM funds held by ASCAP on his appointment as permanent receiver on September 29, 1941.

The New York case of Polish Relief Comm. v. Banca Nationala a Rumaniei, 288 N.Y. 332, 43 N.E.2d 345, 347, relied on by the defendant Propper, is not in conflict with the above conclusion. That case

arose on a motion by the defendant, a Rumanian banking corporation, to vacate an attachment obtained by the plaintiff, under which levies were made upon deposits maintained by the defendant in New York banking houses. It was held by a closely divided court that Executive Order No. 8389 did not forbid such an attachment because "The lien of an attachment is always hypothetical in some degree," and "A 'seizure subject to license' was, we think, sufficient for the purpose of jurisdiction in rem over the deposits in question." All that the case stands for is that in New York a levy upon New York deposits "subject to license" is sufficient to support jurisdiction in rem, and is not prohibited by the Executive Order. In the present case the whole question is whether the defendant Propper as receiver has title, and the Polish Relief decision made no adjudication of that question.

I hold therefore that the defendant Propper as receiver has no right, title or interest in the funds held by ASCAP for AKM. There may be a decree accordingly for summary judgment in favor of the plaintiff against the defendant Propper.