**CLARK, Atty. Gen. v. PROPPER.**

No. 294, Docket 21018.

Circuit Court of Appeals
Second Circuit.

Aug. 3, 1948.

A. Walter Socolow, of New York City, for Henry M. Propper, defendant-appellant.

Herbert P. Jacoby, of New York City (Schwartz & Frohlich and Louis D. Frohlich, all of New York City, on the brief), for Deems Taylor, defendant-appellee.

David Schwartz, Atty., Office of Alien Property, Dept. of Justice, of Washington, D. C. (David L. Bazelon, Asst. Atty. Gen., Dir., Office of Alien Property, Max Isenbergh, Sp. Asst. to the Atty. Gen., and James L. Morrisson and David E. Feller, Attys., Office of Alien Property, Dept. of Justice, both of Washington, D.C., and John F. X. McGohey, U. S. Atty., of New York City, on the brief), for Tom C. Clark, Atty. Gen., plaintiff-appellee.

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

This appeal raises the questions whether a temporary receiver appointed by a New York state court over assets of German nationals has such title as to defeat a later freezing order of the Executive prohibiting the transfer of enemy funds and a still later seizure by the Alien Property Custodian or, if not, whether the appointment of a permanent receiver after the effective date of the order is a bar to the Custodian's claim. The district court decided against the claims of the receiver, defendant Propper, and dismissed him from the case. Markham v. Taylor, D.C.S.D.N.Y., 70 F.Supp. 202. He appealed, but since no final judgment had been entered against the other defendant for the amount due, we dismissed the appeal. Clark v. Taylor, 2 Cir., 163 F.2d 940. Final judgment now having been entered, this appeal by Propper tests its validity as well as that of the earlier judgment against him alone.

Since the two previously published opinions just cited contain a review of the facts, we shall limit ourselves to such further statement as is here immediately necessary. The subject matter of the controversy is a sum of money owed as royalties by the American Society of Composers, Authors and Publishers, an unincorporated association, to a similar Austrian organization, A KM, under a contract between the two. Deems Taylor, as president of ASCAP, and Tom C. Clark, Attorney General, as successor to the Alien Property Custodian, have stipulated the amount due to be $46,839.54; and the final judgment ordered the payment of that sum to the Attorney General. On June 12, 1941, defendant Propper was appointed temporary receiver of the assets of AKM located in the State of New York; and this appointment was made permanent by the state court on September 29 of the same year. Meanwhile, on June 14, 1941, the President of the United States by Exec. Order 8389, 5 F.R. 1400, as amended by Exec. Order 8785, 12 U.S.C.A. § 95a note, 3 C.F.R., 1941 Supp., p. 225, 6 F.R. 2897, prohibited the transfer of Austrian property unless authorized by the Secretary of the Treasury. The Secretary has not authorized any transfer of AKM assets. On July 29, 1941, Propper sued Taylor, representing ASCAP, in the New York state courts to recover the sums allegedly due. This suit has not yet been finally adjudicated. On September 4, 1943, the Alien Property Custodian, plaintiff's predecessor, vested in himself all assets held by ASCAP for the Austrian organization. ASCAP, however, refused the Custodian's demand for a turnover of the sums allegedly due; and the Custodian then brought suit in the District Court, against both Taylor, as president of ASCAP, and Propper, to secure the turnover and a declaration that Propper had no right to the fund. The court there

held that Propper, as a temporary receiver appointed under § 977-b of the N. Y. Civil Practice Act, had no title or interest in the funds held by ASCAP, that the Executive Order prohibiting the unlicensed transfer of property owned by Austrian nationals was effective prior to the appointment of Propper as permanent receiver, and that he could receive no title to these assets by virtue of such appointment, the prohibition being applicable alike to transfers of a judicial character and those of a voluntary nature. Markham v. Taylor, supra. Hence the court entered the summary judgment against Propper from which the earlier appeal was taken.

After the dismissal of this appeal and the filing of the stipulation between plaintiff and ASCAP settling the amount due as between them, the district judge at a hearing on pre-trial determined that there was no further obstacle to final judgment, and therefore entered summary judgment for plaintiff. On this appeal Propper is of course confined to his claims of law, but he asserts that the stipulated amount represents a sum much less than that actually owed by ASCAP to AKM.

The first question is therefore whether Propper's appointment as temporary receiver before the Executive freezing order gave him such title to the chose in action in question as to prevent its seizure by the Custodian. The authority for the appointment, N. Y. Civil Practice Act, § 977-b, is a statute passed in 1936 for the appointment of "Receivers to liquidate local assets of foreign corporations." It authorizes the appointment of a temporary receiver "pending the determination of the action"; it specifies the mode of service of process on the defendant; and it provides for the entry of judgment and the appointment of a permanent receiver upon default of the defendant, or after trial. Judge Coxe held that this section did not depart from the general New York rule, applicable to chancery as well as statutory receiverships, namely, that a temporary receiver does not obtain title by virtue of his appointment. We agree.

The New York courts have consistently ruled that a temporary receiver pendente lite does not obtain title to the property, but has only a right of possession. Keeney v. Home Ins. Co., 71 N.Y. 396, 27 Am.Rep. 60; Herring v. New York, L. E. & W. R. Co., 105 N.Y. 340, 12 N.E. 763; Decker v. Gardner, 124 N.Y. 334, 26 N.E. 814, 11 L. R.A. 480; Stokes v Hoffman House, 167 N.Y. 554, 60 N.E. 667, 53 L.R.A. 870; Sigua Iron Co. v. Brown, 171 N.Y. 488, 64 N. E. 194; Mutual Brewing Co. v. New York & College Point Ferry Co., 16 App.Div. 149, 45 N.Y.S. 101; In re French, 181 App.Div. 719, 168 N.Y.S. 988, affirmed 224 N.Y. 555, 120 N.E. 863. See N. Y. General Corporation Law, Consol.Laws, c. 23, §§ 162, 163, 168. Since these precedents show such general understanding in New York of the restricted rights of a temporary receiver, we should look for clear statutory language to disclose a different intent for this one situation here. None is to be found in § 977-b of the N. Y. Civil Practice Act. Nowhere in that statute is the temporary receiver in terms given the title, as appellant contends. Indeed, the only provision spelling out what the temporary receiver takes is subd. 4 of the section, which states that he "shall take, receive and reduce to his possession any and all assets, credits, choses in action and property" in the state of New York. This, as we have seen, is no more than what the chancery receiver took in accordance with the well-settled principles of New York law.

Appellant, however, relying largely on sub. 12, tries to establish that the temporary receiver has the powers of a permanent receiver and hence takes title to the property. In its entirety that subdivision reads: "Any receiver appointed pursuant to this section shall have all the powers and duties, in addition to those herein provided for, as are possessed by and conferred upon receivers and trustees by the laws of the state of New York." Appellant reasons that "any receiver" includes a temporary one and accordingly that he has the powers of a permanent receiver. We think his argument proves too much. Subd. 4 defines the temporary receiver's powers and states that he can reduce the property to possession. It does not even suggest that he takes title. Clearly there would be little purpose in spelling out restricted powers

there if the later subdivision was intended to make them unlimited. To do so would set at naught the distinction between a temporary and permanent receiver so obviously intended by the language of the statute. More readily the quoted language should be read to mean that a temporary receiver under this provision takes the usual powers of other temporary receivers in New York.

Appellant offers a further variant of this argument based upon his contention that the final judgment whereby he was made permanent receiver established that AKM had ceased to exist at the time of his initial appointment as temporary receiver. From that he concludes that the property vested by the order appointing him temporary receiver and not by the final judgment entered in that action. He offers no compelling argument as to why his appointment as permanent receiver should be given such retroactive effect. Nor does he cite any case that supports his view. We have found none; nor do we think the result desirable. The decisive point of time to consider in determining whether Propper had title to AKM's assets in the state of New York was June 14, 1941, when the Executive Order forbade any unlicensed transfer of its property. At such time, and under the appointment he then had, Propper's only power was to reduce the assets to possession. In a different context we have recently declared our unwillingness to give retroactive effect to state law so as materially to alter rights accruing to the federal government under a federal statute. Daine v. C.I.R., 2 Cir., 168 F.2d 449. We think the reasons for refusing retroactivity are the more compelling here. For if appellant's position is sound, then the right of the Custodian to an enemy alien's property must wait upon the litigation by private persons in state courts—litigation that might well be collusive and certainly would be protracted.

Appellant's other main argument is that the regulation of the Treasury Department, General Ruling No. 12, parag. (4), April 21, 1942, 7 F.R. 2991, allows a transfer of property by the courts. Thus, his appointment as permanent receiver on September 29, 1941, would accomplish the transfer of AKM's assets to him. The Treasury Department, in Public Circular No. 31, issued August 2, 1946, 11 F.R. 8351, in interpreting that regulation bluntly states that "the judicial process cannot, without a license or other authorization from the Secretary of the Treasury, operate to transfer or create any interest in blocked property." We agree with this interpretation. The language of Exec. Order 8389 prohibits the unlicensed transfer of an enemy alien's property. There is no cogent reason for excepting transfers by judicial process. To allow the exception would be to furnish a means of evasion by which the impact of freezing controls could be avoided by recourse to judicial proceedings. Such would negate the executive and legislative intention. Appellant has cited Singer v. Yokohama Specie Bank, 293 N.Y. 542, 58 N.E. 2d 726, in support of his position. But the problem is not the construction of a state statute in this aspect of the case, and accordingly interpretation of the ruling by the state court is not decisive. For the reasons stated we are of the opinion that the prohibition of unlicensed transfers as contained in Exec. Order 8389 is universal. The critique of this New York case in Berger and Bittker, Freezing Controls: The Effects of An Unlicensed Transaction, 47 Col.L.Rev. 398, is persuasive.

On this appeal Propper makes an additional contention, not made in his earlier appeal, but undoubtedly stimulated by certain expressions found in our opinions as originally filed, though omitted from the final opinions refiled upon denial of rehearing. This is that the interpretation of N. Y. Civil Practice Act, § 977-b, is for the New York courts, and that this action should be dismissed or stayed pending the obtaining of a state ruling, in reliance upon cases such as Musser v. State of Utah, 333 U.S. 95, 68 S.Ct. 397; City of Chicago v. Fieldcrest Dairies, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355; Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971. We do not think, however, that this is the occasion for that somewhat drastic course. It seems designed for and limited to cases involving serious and doubtful questions, often of a constitutional nature, involving the inner economy or

the sovereign rights of a state where federal action, if not circumspect, may upset the delicate balances necessarily inherent in a federal system of government. We should doubt if a mere interpretation of a procedural statute, easily corrected if erroneous without noticeable impact upon the public activities of the state, would show such a case at best. Certainly it would seem not to do so when our interpretation simply follows the usual state construction in a more or less routine manner where the issue is not doubtful. Moreover, this case involves also unusually important federal rights, whose construction is at once more difficult and more far-reaching than any question of state's rights here involved. Such federal ruling as to wartime powers of the national government is not of the sort which can properly await the long delays found a necessary concomitant to the seeking of state guidance in special cases. We therefore deny appellant's request. See Meredith v. City of Winter Haven, 320 U. S. 228, 64 S.Ct. 7, 88 L.Ed. 9; Markham v. Allen, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256.

Appellant's further jurisdictional objection (and this he has stressed from the beginning) is that the subject matter of the controversy is in the custody of the state court, thus excluding federal power. This is answered by pointing to the fallacy of the assumption that, even if such custody be considered to exist, it is decisive. The federal court can resolve the claim of the Custodian and those of other claimants to property in the custody of a state court; and often, if not generally, it is important and necessary that the issue be settled promptly and decisively. Markham v. Allen, supra; Clark v. Tibbetts, 2 Cir., 167 F. 2d 397. Indeed, the New York courts have expressly so held. Application of Alien Property Custodian of United States, 270 App.Div. 732, 60 N.Y.S.2d 897. See In re Sielcken's Estate, 167 Misc. 327, 3 N.Y.S.2d 793; Stern v. Newton, 180 Misc. 241, 39 N.Y.S.2d 593. And where, as here, it appears that there is left no adverse claim before the court, judgment for the plaintiff necessarily results.

Affirmed.