## HEYDEN CHEMICAL CORPORATION v. CLARK, Attorney General.

United States District Court
S. D. New York.
Oct. 23, 1948.

Fulton, Walter & Halley, New York City, and Harmon Duncombe, and Robert M. Davis, New York City, for plaintiff.

John F. X. McGohey, New York City, and Laurence H. Axman, New York City, James D. Hill, Washington, D. C., for Tom C. Clark, Attorney General.

BONDY, District Judge.

The defendant moves for judgment dismissing the complaint upon the grounds that it fails to state a claim upon which relief can be granted and that the court lacks jurisdiction over the subject matter of the action.

The plaintiff brought this action under Section 9(a) of the Trading With The Enemy Act of 1917, as amended, 50 U.S.C.A.Appendix, Section 9(a), and the Fifth Amendment to the Constitution of the United States, for a judgment "establishing that plaintiff has an interest or right in or to" certain shares of stock, "and a right to purchase" the shares, and directing defendant to transfer to plaintiff the shares and the certificates representing the same on payment therefor.

For a first cause of action it is alleged that on April 6, 1942 the plaintiff, a Delaware corporation, entered into an agreement with Swiss Bank Corporation, and with Chemical and Pharmaceutical Enterprises, Ltd., both of which are foreign corporations organized and existing under the laws of Switzerland, for the purchase by plaintiff from them of shares of stock of Schering Corporation, a New Jersey corporation, "for the sum of $1,627,-000. in cash, delivery of certificates representing the Shares and payment therefor to be made upon issuance by the Treasury Department of an appropriate license under the Trading with the Enemy Act, as amended, and the regulations thereunder applicable to transactions involving the property of foreign nationals", that plaintiff duly prosecuted an application for a license to purchase the shares and had good reason to believe, prior to April 18, 1942, that the license was about to be issued, that the shares are unique, that their acquisition is of special importance to plaintiff, for the loss of which it can not be compensated by an award of pecuniary damages, that under the agreement plaintiff acquired "a right and interest in and to the Shares to require that the Shares be transferred to plaintiff upon performance by plaintiff of all the conditions of the agreement on its part", that on April 18, 1942, the Alien Property Custodian caused to be issued a vesting order whereby he vested pursuant to Section 5(b) of the Trading With The Enemy Act, as amended, 50 U.S.C.A.Appendix, § 5(b), practically all of the shares which plaintiff had contracted to purchase, that pursuant to the order Schering Corporation cancelled the certificates representing the vested shares and issued new certificates in the name of the Custodian, that the vesting of the shares was in violation of due process of law and that by reason of these facts "defendant holds the vested shares subject to the interest and right of plaintiff to acquire" the shares at the price it had agreed to pay. For a second cause of action it is further alleged that prior to the time he issued the vesting order the Custodian had notice of plaintiff's agreement to purchase the shares and that therefore the defendant holds the vested shares subject to the equitable right and interest of the plaintiff to acquire them at the agreed price. For a third cause of action it is still further alleged that the Custodian vested the shares with knowledge that plaintiff was negotiating for the purchase thereof and that his acts would result in unusual and serious harm to plaintiff for which it can not be compensated by an award of pecuniary damages, and by reason of this, holds the shares subject to plaintiff's interest and right to acquire them on payment.

Plaintiff concedes that the grounds urged for dismissal, if valid, are applicable to all three causes of action.

Notwithstanding that an executory conditional contract for the sale of personal property, however unique, does not transfer any interest in the property, the plaintiff contends that "in view of the unique nature of the shares of Schering

stock, the agreement between plaintiff and Swiss Bank gave plaintiff an equitable interest in the shares and a right to require specific performance of the agreement." As plaintiff itself alleges, the performance of the agreement was expressly conditioned upon the issuance of a license by the Treasury Department. This condition must be regarded as having been imposed for the benefit of the sellers as well as of the purchaser of the stock. It is not apparent how any right to enforce the agreement could arise before compliance with an express condition precedent to any obligation on the part of the sellers, or how, consequently, any right or interest in the shares of stock vested in the plaintiff before the condition was fulfilled. See 2 Williston on Contracts, Revised Edition, Section 364 A, p. 1064. Moreover it is evident that plaintiff can not fulfill the condition precedent to its acquiring any right to the transfer of the stock or any interest therein since the Secretary of the Treasury has announced in Public Circular No. 31, August 2, 1946, 11 F.R. 8351, that the vesting of property by the Custodian operates as a final denial of any pending application for a license and that no application for a license will thereafter be entertained or granted. Furthermore Section 9(a) of The Trading With The Enemy Act provides the exclusive remedy available to a person claiming vested property. It states that only where a person claims "any interest, right, or title", the claimant may sue to establish the "interest, right, title" and, if established, the court shall order the transfer or delivery of the property. Since the plaintiff's allegations disclose that it can not establish any right, title or interest in the shares of Schering stock it can not successfully maintain a suit for the transfer or delivery of the stock under Section 9(a) of the Act. Nor can it successfully maintain a suit against the United States for specific performance of a contract to sell the stock to it because the United States has not consented to be sued under those circumstances. See Iwazo Yamashita v. Clark, D.C., 75 F.Supp. 51, 56.

■ The vesting order of the Custodian did not deprive the plaintiff of any property in violation of due process of law. It merely prevented the performance of the agreement under which the plaintiff sought to acquire the shares.

In no event could the Custodian's knowledge of plaintiff's agreement to purchase the shares obligate him to sell the vested shares to plaintiff since by Section 12 of the Act, 50 U.S.C.A.Appendix, § 12, it is provided that "any property sold under this Act, except when sold to the United States, shall be sold only to American citizens, at public sale to the highest bidder, after public advertisement of time and place of sale."

■ Plaintiff contends that the condition that a license be obtained was imposed only as a formality to assure compliance with Executive Order No. 8389, 12 U.S.C.A. § 95a note, promulgated pursuant to Section 5(b) (1) of the Trading With the Enemy Act, as amended, and that said Order does not require a license to make an agreement with reference to blocked property of a national of a designated foreign country, but only to make a transfer under such agreement. This contention can not be sustained. Executive Order No. 8389, 5 F.R. 1400, issued April 10, 1940, ratified by the Joint Resolution of May 7, 1940, 54 Stat. 179, and also ratified by Section 302 of the First War Powers Act of 1941, 55 Stat. 839, 50 U.S.C.A.Appendix, § 617, which was made applicable to Switzerland by Executive Orders No. 8785, of June 14, 1941, 6 F.R. 2897, 12 U.S.C.A. § 95a note, prohibited, except as specifically authorized by the Secretary of the Treasury, any person within the United States from transferring or dealing in any evidences of indebtedness or evidences of ownership of property in which any national of a foreign country designated in the Order had any interest on or after the effective date thereof. The Order authorized the Secretary of the Treasury to prescribe regulations, rulings, and instructions to carry out its purposes. The term "property" as used in the Order includes stock. Section 130.2(c) of Regulations issued April 10, 1940, as amended, under Executive Order No. 8389, as amended, 5 F.R. 1401; United States v. Leiner, 2 Cir., 143 F.2d 298, 300.

On April 21, 1942 the Secretary of the Treasury, properly construing the Order, see Clark v. Propper, 2 Cir., 169 F.2d 324, issued General Ruling No. 12, 7 F.R. 2991, which provides that unless licensed or otherwise authorized by the Secretary of the Treasury, any transfer of blocked property after the effective date of the Order is null and void and can not form the basis for the assertion of any interest in such blocked property and that the term "transfer" includes the making, execution, or delivery of any agreement or contract.

On the same day the Secretary of the Treasury issued Press Release No. 34, stating:

"General Ruling No. 12, issued by the Secretary of the Treasury, makes clear that unlicensed transfers of blocked assets in violation of the freezing orders, and transfers designed or having the effect of evading such orders, always have been void and unenforceable."

■ It can not be disputed that the transaction alleged in the complaint involved property in which a national of a designated foreign country had an interest or that the alleged agreement constituted some dealing in evidences of ownership of property expressly prohibited except as specifically authorized by the Secretary of the Treasury. See Schrijver v. Sutherland, 57 App.D.C. 214, 19 F.2d 688, certiorari denied 275 U.S. 546, 48 S.Ct. 84, 72 L.Ed. 418; Clark v. Propper, supra, affirming Markham v. Taylor, D.C., 70 F.Supp. 202, and disagreeing with Singer v. Yokohama Specie Bank, 293 N.Y. 542, 58 N.E.2d 726, relied on by plaintiff; Miyuki Okihara v. Clark, D.C., 71 F.Supp. 319. Even though the Secretary of the Treasury in subdivision (4) of General Ruling No. 12 declared that unlicensed transfers effected by Executive Order No. 8389 shall be valid and enforceable for the purpose of determining rights litigated, he expressly provided that the judicial proceedings shall not create a greater interest in blocked property than the owner thereof could create by voluntary act prior to the issuance of a license. Even if, therefore, by the unlicensed agreement it was at-tempted to vest or transfer an interest in the stock, no such interest was transferred and the Custodian became vested with the stock free of any claims of plaintiff against the Custodian.

The complaint accordingly must be dismissed.