In the Matter of the Accounting of FRANCIS J. MULLIGAN, Public Administrator of County of New York, as Administrator C. T. A., of SUSANNE M. HABEKOST, Deceased.

Surrogate's Court, New York County, December 22, 1952.

*Joseph A. Cox* for administrator *c. t. a.*, petitioner.

*Frederick T. Case,* respondent in person, and for Louis Endenbach and another, respondents.

*Bernard J. Mallin* for Attorney General of the United States, as successor to the Alien Property Custodian, on behalf of Ernst Habekost and another, respondent.

FRANKENTHALER, S. Testatrix died on October 6, 1945, leaving a will which named as residuary legatee her brother, a national of Germany residing in the Russian Zone of that country. On June 12, 1947, the brother executed before an American Army officer in the American Zone of Berlin an instrument purporting to assign all the brother's right, title and interest in this estate to two residents of the United States. On August 6, 1951, the Attorney General of the United States as successor to the Alien Property Custodian issued a vesting order whereby he vested all the right, title and interest of the decedent's brother in this estate. In this proceeding for the settlement of the account of the administrator *c. t. a.*, the persons named as assignees in the instrument executed by decedent's brother have filed objections to the accountant's refusal to recognize such instrument as a valid assignment of the residuary estate to the objectants. The Attorney General of the United States has appeared and he is demanding payment to him under the vesting order.

The transaction between the residuary legatee and the objectants herein was one within the Trading with the Enemy Act (U. S. Code, tit. 50, Appendix, § 1, *et seq.*) and the executive orders issued under that legislation. Concededly the assignment was not licensed by the United States Treasury Department as required by Executive Order 8389 as amended (Code of Fed. Reg., Cum. Supp., tit. 3, p. 645) and General Ruling 12 of the Secretary of the Treasury (Code of Fed. Reg., Cum. Supp., tit. 31, p. 8849).

It has been held that an assignment such as here involved, unless licensed, does not give or transfer any interest to the assignee (*Okihara* v. *Clark,* 71 F. Supp. 319; *Blank* v. *Clark,* 79 F. Supp. 373; *Heyden Chemical Corp.* v. *Clark,* 85 F. Supp. 949). In *Blank* v. *Clark* (*supra*), as in the case at bar, an assignment of an interest in a decedent's estate was executed prior to the time the successor to the Alien Property Custodian vested in himself all right, title and interest of the enemy alien in the estate.

In *Propper* v. *Clark* (337 U. S. 472) the court, referring to Executive Order 8785 which amended Executive Order 8389, said (p. 484): " The freezing order of June 14, 1941, immobilized the assets covered by its terms so that title to them might not shift from person to person, except by license, until the Government could determine whether those assets were needed for prosecution of the threatened war or to compensate our citizens or ourselves for the damages done by the governments of the nationals affected. *United States* v. *Chemical Founda-*

*tion,* 272 U. S. 1, 11; *Silesian-American Corp.* v. *Clark,* 332 U. S. 469, 476.'' That such a license is essential to an effectual transfer or assignment was emphasized by the highest court of this State in *Polish Relief Comm.* v. *Banca Nationala a Rumanei* (288 N. Y. 332) and reiterated in *Singer* v. *Yokahama Specie Bank* (293 N. Y. 542; 299 N. Y. 113). While the *Singer* case may be authority to the effect that some enforcible legal obligation can be created by an unlicensed transaction, the presently pertinent holding in that decision was that, in the absence of a license, payment of any such obligation is inhibited. Upon reviewing *Singer* v. *Yokahama Specie Bank* (*supra*) the United States Supreme Court said: '' Since the New York court conditioned enforcement of the claims upon licensing by the Alien Property Custodian, federal control over alien property remains undiminished. Our decision in *Propper* v. *Clark* (337 U. S. 472), does not require a contrary conclusion. There the liquidator claimed title to frozen assets adversely to the custodian, and sought to deny the custodian's paramount power to vest the alien property in the United States. No such result follows from the New York court's judgments in the present cases.'' (*Lyon* v. *Singer,* 339 U. S. 841, 842–843.)

In *State of Netherlands* v. *Federal Reserve Bank* (99 F. Supp. 655), it was pointed out that in *Propper* v. *Clark* (*supra*) the court had under consideration the extent of any interest that could be derived from a transaction, in itself proscribed, which, being illegal, could not give rise to a claim, while in *Lyon* v. *Singer* (*supra*) the rights validated arose of transactions not illegal in their inception. The *Lyon* v. *Singer* rule was referred to by the United States Supreme Court in *Zittman* v. *McGrath* (341 U. S. 446), wherein it was held that liens obtained in actions instituted by warrants of attachment upon bank accounts of an alien enemy and default judgments entered in the actions were not inconsistent with the wartime freezing program. The decision pointed out that General Ruling No. 12 under Executive Order No. 8389, specifically prohibiting an attachment levy as a '' transfer '', was issued some months subsequent to the attachments under consideration (cf. *Orvis* v. *McGrath,* 198 F. 2d 708) and the court emphasized the fact that, while the provisional remedy of attachment provided the basis of jurisdiction in the suits and created the liens to secure satisfaction of the judgments, no transfer of possession of the bank accounts was attempted or accomplished and no transfer of title to the funds resulted from the actions against the enemy debtors.

In the instant case the purported assignment was executed long after the issuance of General Ruling No. 12 which specifically mentioned and prohibited any assignment of this character. If the assignment had any significance it was an attempt to transfer title and possession of the assignor's interest in this estate. The nature and purpose of the transaction were contrary to the wartime program of the Government and the assignment was illegal and ineffectual.

The legatee's interest in this estate existed prior to December 31, 1946, and for this reason the objectants cannot claim the benefit of Treasury General License 94, as amended March 4, 1947 (Code of Fed. Reg., Cum. Supp., tit. 31, p. 4539, § 131.94), which granted a license to German nationals to make certain transfers that previously had been forbidden.

The assignment before the court was executed in the American Zone of Germany. It has been held that any such assignment executed by a resident of that occupied area and not licensed by the United States Military Government is ineffectual to avoid vesting by the Alien Property Custodian (*Matter of Muller,* 199 Misc. 745; *Kent Jewelry Corp.* v. *Kiefer,* N. Y. L. J., Nov. 12, 1952, p. 1126, col. 2), but no occasion here exists for considering the applicability of the laws promulgated by the military Government to attempted transfers within the American Zone of Germany by a resident of the Russian Zone of that country since the provisions of the Trading with the Enemy Act and the executive orders and the treasury rulings implementing that statute are decisive of the issue herein.

The objections to the account are dismissed. The motion to strike out testimony of the objectant Aurelia Habekost is denied. The claim of objectant Case for legal services and disbursements is allowed.

Submit decree on notice settling the account.