EUGENE T. SINGER, Appellant, *v.* THE YOKOHAMA SPECIE BANK, LIMITED, Defendant, and ELLIOTT V. BELL, as Superintendent of Banks of the State of New York, Respondent.

Argued October 20, 1944; decided November 30, 1944.

*Wm. Dwight Whitney, Geo. M. Billings* and *Jack W. Robbins* for appellant. I. The New York transaction constituted a promise to pay. A promise to pay may be verbal. (*Baldwin's Bank* v. *Smith,* 215 N. Y. 76; *Hillas & Co., Ltd.,* v. *Arcos, Ltd.,* 147 L. T. 514.) II. Assuming that the verbal promise requires written confirmation, this is provided by the letter. (*Outlet Embroidery Co., Inc.,* v. *Derwent Mills,* 254 N. Y. 179; *Stulsaft* v. *Mercer Tube & Mfg. Co.,* 288 N. Y. 255.) III. The promise by the New York agency constituted the transaction contemplated by the statute. (Restatement of Contracts, § 75, subd. 2; Civ. Prac. Act, § 209; *Salimoff & Co.* v. *Standard Oil Co.,* 259 N. Y. 219.) IV. This was not a transaction prohibited by the Federal freezing regulations. Adjudication and the entry of judgment are expressly authorized by Treasury Ruling 12. (*Bollack* v. *Societe Generale etc., en France,* 263 App. Div. 601; *Polish Relief Comm.* v. *Banca Nationala a Rumaniei,* 288 N. Y. 332.) V. There is no requirement of law that consideration shall have passed from Standard-Vacuum to the New York agency. The operative fact is the promise (or assent) to make the payment. (*White* v. *Rintoul,* 108 N. Y. 222; *F. N. Bank* v. *Chalmers et al.,* 144 N. Y. 432; *Goodwin* v. *Bowden,* 54 Me. 424.) VI. The condition of obtaining the Federal license was understood between the parties (Standard and the New York Agency) to be a condition to payment, not a condition to the creation of the debt. (*Polish Relief Comm.* v. *Banca Nationala a Rumaniei,* 288 N. Y. 332.)

*Donald Marks* for Orvis Brothers & Company, *amicus curiæ* in support of appellant's position. I. The statutory class of " transaction " claims should not be limited to claims arising out of contracts. (*Ter Kuile* v. *Marsland,* 81 Hun 420; *Bank* v. *Lee,* 7. Abb. Pr. 372; *Deagen* v. *Weeks,* 67 App. Div. 410; *International Shoe Co.* v. *Hawkinson,* 72 N. D. 622.) II. The statute (Banking Law, § 606, subd. 4) does not preclude the allowance of plaintiff's claim as that of a nonpreferred creditor. (*Matter of Union Bank,* 204 N. Y. 313; *Garlick et al.* v. *Prudence Co., Inc., et al.,* 79 F. 2d 77, 296 U. S. 646.)

*Edward Feldman* and *Isadore H. Cohen* for respondent. I. Appellant's claim is not provable in the New York liquidation.

The communications from Yokohama to the Agency, and from the Agency to Standard, did not give rise to a cause of action against the Agency in favor of Standard. Only preferred claims may participate in the liquidation. (*Matter of People [Norskeo Lloyd Ins. Co.]*, 242 N. Y. 148; *Matter of People [City Eq. Fire Ins. Co.]*, 238 N. Y. 147; *Moscow Fire Ins. Co.* v. *Bank of New York*, 280 N. Y. 286; *Matter of Beha [Second Russian Insurance Co.]*, 224 App. Div. 105; *Matter of Second Russian Ins. Co. [Hamburg Ins. Co.]*, 219 App. Div. 46; *McGhee* v. *Casualty Ins. Co. of America*, 15 Ohio App. 457; *Middleby's Estate*, 249 Pa. 203; *Hall* v. *Holland House Co.*, 12 Misc. 55; *Osgood* v. *Ogden*, 4 Keyes 70; *United States* v. *Pink*, 315 U. S. 203.) II. Appellant must have a cause of action arising out of a transaction with the agency. (*Matter of People [Norske Lloyd Ins. Co.]*, 242 N. Y. 148; *Matter of People [City Eq. Fire Ins. Co.]*, 238 N. Y. 147; *Matter of People [Norske Lloyd Ins. Co.]*, 249 N. Y. 139; *Matter of People [First Russian Ins. Co.]*, 255 N. Y. 428; *Moscow Fire Ins. Co.* v. *Bank of New York*, 280 N. Y. 286; *Aetna National Bank* v. *Fourth National Bank*, 46 N. Y. 82.) III. The agency never made an independent promise to pay, and at best, what it said was conditioned upon an event which never occurred. (*Pink* v. *American Surety Co.*, 283 N. Y. 290; *Home Insurance Co.* v. *Continental Ins. Co.*, 180 N. Y. 389; *Hopper* v. *Sage*, 112 N. Y. 530; *Stulsaft* v. *Mercer Tube & Mfg. Co.*, 288 N. Y. 255; *Ford* v. *Snook*, 205 App. Div. 194, 240 N. Y. 624; *Bradley* v. *Wheeler*, 44 N. Y. 495; *Green* v. *Wachs*, 254 N. Y. 437.) IV. No cause of action would arise even if the language used were unconditional. (*Carpenter* v. *Sparta Savings Bank*, 182 N. Y. S. 172; *Morgan* v. *Lariviere*, L. R. 7 H. L. 423.) V. Assuming an otherwise unconditional promise, it would be unenforcible for lack of consideration. (*Fairchild* v. *Feltman*, 32 Hun 398.) VI. The communications could not have created any enforcible rights in Standard because the Agency was prohibited by the freezing regulations from complying with the instructions from Yokohama. (*Philipp* v. *Chase National Bank of the City of New York*, 34 N. Y. S. 2d 465; *Segal* v. *Chemical Importing and Manufacturing Co.*, 205 App. Div. 220; *Schneider* v. *National City Bank of New York*, 107 N. Y. L. J. 1824.)

*Herbert Wechsler,* Assistant Attorney-General; *James B. McNally,* United States Attorney; *Harry Le Roy Jones* and *Irving J. Levy,* Special Assistants to Attorney-General; *William L. Lynch,* Assistant United States Attorney; *Ansel F. Luxford,* Assistant General Counsel; *Lawrence S. Lesser,* Special Assistant to General Counsel; and *Irving Moskovitz,* Head Attorney, United States Treasury Department, for United States of America, *amicus curiæ.* I. The transaction upon which plaintiff predicates his claim is a transfer of credits and foreign exchange transaction within the meaning of and prohibited by Executive Order No. 8389, as amended. II. The prohibitions of the order render the transaction void. (*United States* v. *Von Clemm,* 136 F. 2d 968; *United States* v. *Pink,* 315 U. S. 203; *United States* v. *Belmont,* 301 U. S. 324; *Hirabayashi* v. *United States,* 320 U. S. 81; *Martin* v. *Mott,* 12 Wheat. 19; *Grogan* v. *Walker & Sons,* 259 U. S. 80; *Polish Relief Comm.* v. *Banca Nationala a Rumaniei,* 288 N. Y. 332; *Norman* v. *B. & O. R. Co.,* 294 U. S. 240; *Holyoke Power Co.* v. *Paper Co.,* 300 U. S. 324; *Kennett* v. *Chambers,* 14 How. 42; *Hanger* v. *Abbott* [1867], 6 Wall 532; *Straus & Co.* v. *Canadian Pacific Ry. Co.,* 254 N. Y. 407; *Morgan Munitions Co.* v. *Studebaker Corp.,* 226 N. Y. 94.) III. The transaction upon which plaintiff predicates his claim has not been authorized by the Secretary of the Treasury. General Ruling 12 does not authorize a transfer of credit by litigation. (*Matter of Richardson,* 247 N. Y. 401; *Matter of State Industrial Comm.,* 224 N. Y. 13; *U. S.* v. *Ferreira,* 13 How. 40; *Baltimore & Ohio R. R. Co.* v. *Pitcairn Coal Co.,* 215 U. S. 481.)

LEWIS, J. The Yokohama Specie Bank, Ltd., to which it will be convenient to refer as " Yokohama Specie ", is a banking corporation incorporated under the laws of the Empire of Japan and was formerly licensed by the respondent Superintendent of Banks to transact a limited banking business in the State of New York. Under that license Yokohama Specie was permitted to maintain in this State an agency for the transaction of such a banking business. On December 8, 1941, after a state of war had been declared to exist between the United States and Japan, the Superintendent of Banks, acting pursuant to section 606 of the Banking Law, took possession

for the purpose of liquidation of the business, property and affairs of Yokohama Specie within the State of New York and suspended the operation of its New York Agency. While such liquidation was in process the plaintiff·asserted his right as a creditor of the New York Agency under an assignment from Standard Vacuum Oil Company — to which reference will be made as " Standard "— and filed with the Superintendent of Banks on November 21, 1942, a claim for $557,561.25 against funds of the New York Agency in the possession of the Superintendent. That claim, based upon facts which are not here in dispute and are presently to be considered, was rejected by the Superintendent of Banks upon the ground that applicable law afforded no basis for its payment.

As a means to enforce his claim, the plaintiff instituted the present suit, wherein, upon motion by the defendant at Special Term, the action was severed to permit its continuance against Yokohama Specie and the complaint was dismissed against the Superintendent of Banks. The Appellate Division has granted to the plaintiff leave to appeal from its order unanimously affirming the judgment entered at Special Term and has certified that a question of law is involved which should be reviewed by this court. That question of law arises from the following facts:

On August 27, 1941, Standard, through its Yokohama office delivered to Yokohama Specie in Japan the yen equivalent to $557,561.25 with instructions to pay that dollar amount to Standard in New York. Two days later, on August 29, 1941, the assistant-treasurer of Standard in New York was advised by telephone by the cashier of the New York Agency of Yokohama Specie that the New York Agency had received from Yokohama Specie the telegraphic transfer of $557,561.25 which amount was available for payment to Standard. In response to this advice the assistant-treasurer of Standard stated to the cashier of the New York Agency that Standard was making the necessary application to the United States Treasury Department for a license which would permit the payment by the New York Agency to Standard. On September 2, 1941, Standard received at its New York office the following confirmatory letter:

"THE YOKOHAMA SPECIE BANK, LIMITED
NEW YORK AGENCY
EQUITABLE BUILDING

New York, August 29th, 1941.

STANDARD VACUUM OIL COMPANY
10 Broadway
New York City
New York.

GENTLEMEN:                 Att. Mr. Mitbo:

Referring to our telephone conversation of today, we wish to advise you that we have received telegraphic instructions from our Yokohama Office to pay you the sum of $557,561.25.
We understand that you are filing an application with The Treasury Department of the U. S. A. for a License in order to permit us to make this payment to you.
Awaiting your reply regarding this matter, we remain

Yours very truly,
THE YOKOHAMA SPECIE BANK, LTD.
(signature illegible)

*p. p. Agent* "

During the preparation by Standard of the application to the Treasury Department a representative of Standard was advised by telephone by a representative of the New York Agency that the payment would be made to Standard from funds of the New York Agency on deposit with Guaranty Trust Company of New York.

Before any payment was made by the New York Agency to Standard there occurred the attack by Japan at Pearl Harbor. Then followed the declaration of war and promptly thereafter the Superintendent of Banks took possession of the funds of the New York Agency and proceeded to liquidate the same pursuant to section 606 of the Banking Law. That statute, after specifying grounds upon which the Superintendent may take possession of the business and property in this State of a foreign banking corporation, provides in part: " 4 (a) * * * *the claims of creditors of such corporation arising out of transactions had by them with its New York agency* or agencies or whose names appear as creditors on the books of such agency or agencies shall be preferred against the assets of such corpora-

tion in this state without prejudice to their right to share in the other assets of such corporation." (Italics supplied.)

Our problem is concerned chiefly with the interpretation and application of the italicized portion of the statute quoted above.

The plaintiff concedes that neither his name nor the name of his assignor, Standard, appears as a creditor on the books of the New York Agency of Yokohama Specie. However, the plaintiff asserts that, within the provisions of section 606, sub-division 4, paragraph (a), its assignor, Standard, had a *transaction* with the New York Agency the details of which, when considered together, were sufficient in law to qualify for payment the claim in suit.

The Superintendent of Banks has thus far successfully maintained that the deposit by Standard with Yokohama Specie in Japan and the subsequent telegraphic instructions by Yokohama Specie to its New York Agency, followed by the communications, mentioned above, from that Agency to Standard in New York, did not create enforcible rights in favor of Standard arising out of a *transaction* by Standard with such Agency within the terms of section 606, subdivision 4, paragraph (a) of the Banking Law.

Prior to December 8, 1941, the date when the declaration of war caused the Superintendent of Banks to take possession of the business and property of Yokohama Specie in New York, the Superintendent had issued to that foreign corporation a statutory license under which it was permitted " * * * to maintain an agency [in the City of New York] for the purpose of transacting the business of * * * receiving money for transmission or transmitting the same by * * * cable or otherwise * * * ". When on August 27, 1941, Yokohama Specie at its home office in Japan accepted funds from Standard it thereby became indebted to Standard in the amount then deposited. When on August 29, 1941, following instructions from Standard, and acting under its New York license, Yokohama Specie transmitted those funds by cable from Japan to its New York Agency, we think the consequent oral and written communications, to which reference has been made — by which the New York Agency advised Standard that it was in funds from its Yokohama home office which it was instructed to pay to Standard — served to create an enforcible legal obligation

by the New York Agency to make such payment. (See *Sayer* v. *Wynkoop*, 248 N. Y. 54, 58–60; *Goodwin* v. *Bowden*, 54 Me. 424, 425; *Griffin* v. *Weatherby* [1868] L. R. 3 Q. B. 753, 758–9; 2 Williston on Contracts [Rev. ed.], § 349, p. 1035; Mechem on Agency [2d ed.], p. 1072; Tiffany on Agency [2d ed.], p. 355.)

The fact that Federal regulations governing transactions in foreign exchange prevent the payment to Standard until a license under Executive Order No. 8389, as amended, is procured does not make conditional the obligation of the New York Agency to pay. (See United States Treasury Department, General Ruling No. 12 (4) under Executive Order No. 8389 as amended; also *Feuchtwanger* v. *Central Hanover Bank*, 288 N. Y. 342.)

Our conclusion is that the course of dealing which culminated in the advice to Standard by Yokohama Specie's New York Agency, given in accord with instructions from its home office in Japan, was a *transaction* had by a creditor (Standard) of a foreign corporation (Yokohama Specie) '' with its New York agency,'' within the provisions of section 606, subdivision 4, paragraph (a) of the Banking Law. Any payment of funds by Yokohama Specie's New York Agency to Standard as an incident of such transaction is subject to the provisions of Executive Order No. 8389, as amended.

The judgments should be reversed and the motion by the Superintendent of Banks denied, with costs in all courts.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, CONWAY, DESMOND and THACHER, JJ., concur.

Judgments reversed, etc.