**CLARK, Attorney General, v. CHASE NAT. BANK OF CITY OF NEW YORK et al.**

**CLARK, Attorney General, v. FEDERAL RESERVE BANK OF NEW YORK et al.**

United States District Court
S. D. New York.

Oct. 1, 1948.

John F. X. McGohey, Laurence H. Axman, and Tom E. Harris, all of New York City, and Lewis Haffer, of Washington, D. C., for Tom C. Clark, Attorney General.

Milbank, Tweed, Hope & Hadley, by Timothy N. Pfeiffer and Rebecca M. Cutler, all of New York City, for Chase National Bank of City of New York.

Walter S. Logan, by Lyon Boston, both of New York City, for Federal Reserve Bank of New York.

Joseph M. Cohen, of New York City, for Leo Zittman.

Sidney Posner, of New York City, for John J. McCloskey, Jr., Sheriff of City of New York.

Katz & Sommerich, by Henry I. Fillman, all of New York City, for John F. McCarthy.

BONDY, District Judge.

In one of the above entitled actions the Attorney General, as successor to the Alien Property Custodian, moves for a decree declaring that he is entitled to the possession of the balance remaining to the credit of the Deutsche Reichsbank on the books of the respondent Federal Reserve Bank of New York and in the other he moves for a decree declaring that respondents Zittman,

McCarthy and McCloskey, as sheriff, did not obtain any lien or other interest in the Reichsbank-Direktorium or Deutsche Gold-diskontbank accounts on the books of the respondent Chase National Bank, and that the petitioner is entitled to the balances remaining in such accounts. Both proceedings involve similar facts and similar questions of law. The motion papers disclose that there is not any dispute as to any of the material facts.

In December, 1941, Zittman brought an action in the Supreme Court of the State of New York, Kings County, against the Deutsche Reichsbank and Deutsche Golddiskontbank, German nationals, to recover money allegedly due him, and in January, 1942, McCarthy brought an action in the same court against the Deutsche Reichsbank to recover money allegedly due him. At the time of the commencement of these actions, the respondent McCloskey as sheriff purported to levy on the balance due upon the accounts of the German banks in the respondent banks pursuant to attachments issued by the courts. The state courts ordered service of the summonses by publication, and judgments by default were entered in favor of Zittman on March 27, 1942, and in favor of McCarthy on April 24, 1942.

The accounts had been blocked under freezing controls of Executive Order No. 8389, 5 F.R. 1400, as extended to nationals of Germany by Executive Order No. 8785, 6 F.R. 2897, effective June 14, 1941, 12 U.S.C.A. § 95a note. No license or other authorization for the payment of the judgments out of the blocked accounts was obtained and the respondent banks did not pay to the respondent sheriff any part of the balance due on the deposit accounts of the German banks.

On October 3, 1946, the Alien Property Custodian by an order vested in himself the indebtedness owing to the Reichsbank from the Chase Bank and on October 14, 1946, by an order vested in himself the indebtedness owing to the Golddiskontbank from the Chase Bank. Subsequent demands for payment of such indebtedness to the Custodian were refused by the Chase Bank unless the warrants of attachment issued in the actions brought by Zittman and McCarthy were released.

On October 3, 1946, the Custodian by an order vested in himself the indebtedness owing to the Reichsbank from the Federal Reserve Bank. On demand the Federal Reserve Bank remitted to the Custodian the amount thereof less a sum withheld to cover the attachments in the Zittman and McCarthy actions.

By stipulation the objections to the procedure adopted by the Attorney General in these actions were withdrawn, and it was agreed that the Treasury Department from the inception of the freezing controls informed all litigants who, prior to the commencement of attachment actions against funds belonging to blocked nationals, had requested the Secretary of the Treasury to license an attachment that: "Under Executive Order No. 8389, as amended, and the Regulations issued thereunder, no attempt is made to limit the bringing of suits in the courts of the United States or of any of the States. However, should you secure a judgment against one of the parties referred to in your letter, which is a country covered by the Order, or a national thereof, a license would have to be secured before payment could be made from accounts in banking institutions within the United States in the name of such country or national." It was also stipulated that the Treasury adopted the position that the bringing of an action, the issuance of a warrant of attachment therein and the levy thereunder upon blocked property found within the jurisdiction of the court which issued the warrant were not forbidden but that a license was required before payment could be made from the blocked account to satisfy any judgment recovered in such action, and that the Treasury Department has at various times issued a license authorizing payment out of a blocked account of a blocked national for the purpose of making payment on a judgment recovered in an action where a prior warrant of attachment was issued and levied upon the blocked account of a blocked national, notwithstanding that a license to institute the action and levy the attachment was not procured by a plaintiff and judgment creditor, and further that a license to institute such

action and levy the attachment was in fact not required by the Treasury Department and that the Attorney General did not appear and did not take.any steps in the actions brought by respondents McCarthy and Zittman in the Supreme Court of the State of New York in which the warrants were issued, of which actions he was given notice in writing.

■ The respondents contend that the allegedly attached accounts are in the custody of the state court, that the petitioner seeks relief which would unlawfully interfere with that custody, that full faith and credit must be given to the state attachment proceedings, that the vesting of the property in the Custodian would result in the taking of property without due process of law and that accordingly the petitions must be dismissed.

Arguments similar to those urged in opposition to these motions were presented and considered in Clark v. Propper, 2 Cir., 169 F.2d 324, affirming Markham v. Taylor, D.C., 70 F.Supp. 202. In that case the Circuit Court affirmed an order of Judge Coxe granting a motion for summary judgment in an action seeking a declaration that a permanent receiver for an Austrian cooperative society had no title to or interest in amounts owed to said society by an American association, notwithstanding that the receiver had been appointed to receive and reduce to his possession all the assets of the society by a New York State court judgment which, were it not for the fact that the accounts were blocked, would have vested all title to the property in the receiver, and notwithstanding that a suit brought by the receiver against the association to recover the sums allegedly due was pending in a New York State court. It was held that even if the subject matter of the controversy were in the custody of the state court, the federal court had jurisdiction to adjudicate the claim of the Custodian, Markham v. Allen, 326 U.S. 490, 66 S.Ct. 296, 90, L.Ed. 256, that Executive Order No. 8389, as amended, prohibiting the unlicensed transfer of an enemy alien's property, applies to transfers by judicial process, and that the Order was properly interpreted by Treasury Department General Ruling No. 12, April 21, 1942, 7 F.R. 2991, and by Treasury Department Public Circular No. 31, August 2, 1946, 11 F.R. 8351, both of which declare that judicial process can not, without a license or other authorization from the Secretary, create any interest in blocked property. The court reached its conclusion even though it also was urged that the proceedings in the federal court constituted failure to accord full faith and credit to a judgment of the state court and that the vesting of the property in the Custodian would result in a taking of property without due process of law.

The court considers itself bound by that decision which expressly disagreed with the decision in Singer v. Yokohama Specie Bank, 293 N.Y. 542, 58 N.E.2d 726, upon which respondents rely. Polish Relief Comm. v. Banca Nationala A Rumaniei, 288 N.Y. 332, 43 N.E.2d 345, 347, also relied on by respondents, states that Executive Order No. 8389 "must be taken to have deprived the defendant of power to transfer any interest in these blocked accounts except through the medium of assignment subject to a releasing of the credit by the Secretary of the Treasury." The United States as amicus curiae supported the attachment involved in that case as inoffensive to national policy. The United States however in the instant cases denies that any rights were acquired by virtue of the attachments. The fact that the Treasury Department advised prospective litigants that no license was necessary to bring suit and secure the issuance of a warrant of attachment does not estop the petitioner from taking this position since it is consistent with General Ruling No. 12(4) which specifically provides that while a transfer of blocked property shall be valid and enforceable for the purpose of determining for the parties to an action the rights and liabilities litigated, no attachment, judgment, or other judicial process shall confer any greater interest in any blocked property than the owner of such property could create by voluntary act prior to the issuance of a license.

■ Because the attachments by the sheriff did not transfer any right, title or interest in the blocked property, his applica-

tion for payment of his fees by the Custodian must be denied.

The Chase National Bank claims the right to set off against the Custodian's claims a contingent liability on a guaranty made by it for the account of the Reichsbank to the Irving Trust Company against loss arising from the payment by said trust company of a draft without presentation of the original and duplicate. The guaranty of the Chase Bank to Irving Trust Company does not create any banker's lien or set-off to the claim of the Custodian to the assets of the Reichsbank. See Clark v. Manufacturers Trust Company, 169 F.2d 932, decided by the Court of Appeals for the Second Circuit, August 5, 1948.

The Chase Bank also claims custodian fees accruing in connection with the Golddiskontbank's custody account. The Attorney General having consented to the deduction of the fees without conceding that they are deductible as a matter of right, it becomes unnecessary for the court to pass upon the claim for the allowance.

The motions accordingly are granted subject to the allowance of custodian fees pursuant to the consent of the petitioner.