In the Matter of the Liquidation of YOKOHAMA SPECIE BANK, LTD. SUPERINTENDENT OF BANKS OF THE STATE OF NEW YORK, Petitioner; EUGENE T. SINGER, Respondent.

Supreme Court, Special Term, New York County, February 9, 1951.

*Edward Feldman* for petitioner.

*Albert R. Connelly, George S. Collins, George M. Billings* and *Jack W. Robbins* for respondent.

*Irving H. Saypol, United States Attorney for the Southern District of New York (James D. Hill, Myron C. Baum* and *Charles L. Kent* of counsel), for J. Howard McGrath, Attorney General of the United States, as successor to the Alien Property Custodian.

BENVENGA, J. This is an application by the Superintendent of Banks for an order authorizing the payment of certain funds to the Alien Property Custodian, and for other relief.

In December, 1941, the Superintendent of Banks, pursuant to section 606 of the Banking Law, took over the business and property of the New York Agency of the Yokohama Specie Bank, then a national of a designated enemy country. This was done with the approval of the United States Treasury Department.

In February, 1942, the Secretary of the Treasury licensed the Superintendent of Banks to authorize banking institutions to pay over, transmit or transfer to him, as liquidator, any funds or credit balances of the Yokohama Bank.

In February, 1943, by Vesting Order No. 915 (8 Federal Register 2457), the Alien Property Custodian vested in himself the " excess proceeds " of the business and property of the

Yokohama Bank, remaining in possession of the Superintendent of Banks " after the payment of the claims of the creditors, accepted or established in accordance with the Banking Law of the State of New York."

The Superintendent of Banks thereupon proceeded to liquidate the business and property of the Yokohama Bank. The Standard-Vacuum Oil Co., a Delaware corporation, filed a claim against the bank and it was rejected. The claim was assigned to Eugene T. Singer, who brought suit thereon.

After considerable litigation, it was judicially determined that section 606 of the Banking Law required that the property of the Yokohama Bank be applied to the payment of creditors who have preferred claims against the bank arising out of transactions with its New York agency; that the plaintiff's assignor was such a creditor, and that its claim was payable out of the assets of the Yokohama Bank in the possession of the Superintendent of Banks as liquidator; that while the payment of the claim was subject to the provisions of Executive Order No. 8389, as amended, (Code of Fed. Reg., Cum. Supp., tit. 3, p. 645) its provisions " did not prevent the accrual or creation of the claim sued upon or render such claim void, but merely prevented the payment of the claim until an appropriate federal license is obtained " (see *Singer* v. *Yokohama Specie Bank*, 293 N. Y. 542, motion for reargument denied 294 N. Y. 689; 299 N. Y. 113, motion for reargument denied 300 N. Y. 459, affd. *sub nom. Lyon* v. *Singer*, 339 U. S. 841).

The judgment of the Court of Appeals, in accordance with its remittitur, has been made the judgment of this court.

Following the entry of judgment, Singer filed an application for a license permitting payment of his claim. Not only was the application denied, but the Office of Alien Property served a directive on the Superintendent of Banks, directing him to turn over to the Attorney General of the United States the sum of $557,561.25, which he had allocated and set aside as a reserve for the payment of Singer's claim. The ground of the directive is that the fund is the property of a national of a designated enemy country.

By reason of the conflict between the obligation imposed upon the Superintendent of Banks to comply with the terms of the judgment in favor of Singer and the obligation imposed upon him to comply with the terms of the " turn over " directive, the Superintendent of Banks has applied for an order authorizing and directing him to comply with the " turn over " directive and to release and discharge him from compliance with the judgment of this court.

In support of the application, the moving parties rely upon *Matter of Yokohama Specie Bank* (188 Misc. 137, SHIENTAG, J.) which holds that the determination of the Alien Property Custodian that property is that of an enemy national is "conclusive" for the purposes of his taking possession under the provisions of the Trading with the Enemy Act (U. S. Code, tit. 50, Appendix, § 1 *et seq.*) and that the rights of those who claim an interest in the property are fully protected by the exclusive procedure provided in the Federal act (p. 140).

But the *Yokohama* case (*supra*) is distinguishable. There, the application was opposed by persons who sought to have their interest in the property involved judicially determined before its seizure by the Alien Property Custodian. All the other cases upon which the applicants rely (most of which are cited in the *Yokohama* decision), are equally distinguishable upon the same ground.

Here, the application is opposed by a preferred creditor whose claim has been judicially determined and reduced to judgment. The judgment directs that the claim be paid out of the funds of the Yokohama Bank in the possession of the Superintendent of Banks, as liquidator, and the Superintendent of Banks, in accordance with the judgment, has allocated and set aside funds to pay the claim.

Nor are the funds so allocated and set aside, as the moving parties urge, "excess proceeds" of the property of the Yokohama Bank remaining in the possession of the Superintendent of Banks after the payment of the claims of creditors in accordance with the Banking Law. In other words, the fund is not part of the "excess proceeds" which the Alien Property Custodian vested in himself by the 1943 vesting order. Nor is the fund the property of an enemy country or a national thereof. The assertion of the Alien Property Custodian that it is such property is contrary to the fact as judicially determined, and, therefore, cannot be given the force and effect of a "conclusive determination", as the moving parties argue.

The Attorney General takes the position that, since the payment of the claim is subject to the provisions of Executive Order No. 8389 and cannot be paid until an appropriate Federal license is obtained, and since Singer's application for such a license has been "finally denied", Singer's claim is nothing more than a "non-payable and unenforceable" claim. With that conclusion I am unable to agree. While the claim cannot be paid until the appropriate Federal license has been obtained, this does not authorize a demand that the fund be turned over

to the Alien Property Custodian. And while " federal control over alien property remains undiminished " (*Lyon* v. *Singer*, 339 U. S. 841, 842, *supra*), so long as payment of the claim is conditioned upon obtaining the Federal license, I do not understand this to mean that the granting of the license may be arbitrarily or capriciously withheld, or that it requires that the fund be turned over to the Alien Property Custodian.

In any event, the judgment entered upon the remittitur has become the judgment of this court. Its duty, under the circumstances, is to obey the mandate of the Court of Appeals. It is powerless to vacate, alter or modify it (*Kirkpatrick Home* v. *Kenyon*, 209 App. Div. 179, 180–181; *Matter of Ref. Church* v. *Municipal Ct.*, 185 Misc. 1003, 1005–1006; *United States* v. *Pink*, 36 N. Y. S. 2d 961, 964–965; Civ. Prac. Act, §§ 607-a, 621, 625, 626; Rules Civ. Prac., rule 113). What this court cannot do directly, it cannot do indirectly. As the granting of the application would, in effect, nullify the mandate of the Court of Appeals, it must be denied.

The application is denied. Settle order.